**UNITED STATES, Appellee,**

v.

**Private (E–1) Keith L. WILLIAMS, SSN 077–50–3524, United States Army, Appellant.**

**CM 440486.**

U. S. Army Court of Military Review.

16 Feb. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Charles A. Byler, JAGC, Captain Steven T. Cain, JAGC, and Captain Richard W. Vitaris, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Paul K. Cascio, JAGC, were on the pleadings for appellee.

Before CARNE, O'DONNELL and FOREMAN, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Judge:

Contrary to his pleas, the appellant was convicted of robbery and absence without authority, in violation of Articles 122 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 922 and 886 (1976). His sentence was to a dishonorable discharge, confinement at hard labor for nine months, and total forfeitures. The convening authority approved the sentence.

The appellant contends that he was denied a speedy trial. *See United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). On 23 June 1980, the appellant terminated an absence without authority by surrendering at Fort Hamilton, New York. He was thereafter assigned to the Personnel Control Facility at Fort Dix, New Jersey, where charges were preferred on 8 July 1980 for the unauthorized absence. On 11 July, he was placed in pretrial confinement because of an alleged assault on another soldier, which was formally charged on 23 July 1980. On 28 July the appellant was released from pretrial confinement. On 18 August the assault and unauthorized absence charges were referred to a special court-martial authorized to adjudge a bad-conduct discharge.

As a result of an allegation that the appellant was involved in a robbery which occurred on 25 August 1980, the appellant again was placed in pretrial confinement on 26 August. The robbery charge was preferred on 4 September. On 15 September the appellant's commander requested the convening authority to withdraw the appellant's case from the special court-martial to permit an Article 32 investigation of all charges.[1] The charges were withdrawn on 29 September.

On 2 October the appellant formally demanded prompt disposition of the charges. On 3 October an officer was appointed to conduct the Article 32 investigation. He notified the appellant of the hearing date and expected witnesses on 9 October. The hearing was conducted on 14–15 October and the investigating officer's report was forwarded to the general court-martial convening authority on 21 October. The staff judge advocate completed his pretrial advice to the convening authority on 2 November and the case was referred to a general court-martial on 4 November. On 5 November the appellant requested a Captain Booth as individual defense counsel; the request was approved on a date not reflected in the record.[2] On 10 November the defense submitted a list of requested witnesses in accordance with Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 115. The appellant was released from pretrial confinement on 21 November and tried on 25 November 1980.

The "first prong" of *United States v. Burton, supra*, is not at issue before us. However the appellant contends that he is entitled to relief because of the government's failure to respond to his request for "immediate disposition of charges," thereby raising the "second prong" of *Burton*. At trial, the defense moved to dismiss the charges due to the failure of the govern-

---

1. Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832 (1976) provides in pertinent part that "No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made."

Charges may be referred to an inferior court-martial without such an investigation.

2. Captain Booth had represented the appellant at the Article 32 investigation but subsequently had been transferred from Fort Dix.

ment, once it was in receipt of the request for speedy disposition of the charges, to "respond to the request and either proceed immediately or show adequate cause for any further delay." *Burton, supra* at 118, 44 C.M.R. 172. The military judge ruled that while the government erred in not responding to the request for speedy disposition of the charges, it did proceed with "reasonable diligence in bringing the charges to trial." He therefore denied the motion to dismiss, but stated that due to the government's error he would grant sentence relief.

We hold that the government did "respond" to the demand for "immediate disposition of the charges" by appointing an investigating officer on the day following the demand and conducting the required hearing shortly thereafter. The purpose of the "second prong" of *Burton* is to generate action, not paperwork. A demand for immediate trial may be answered by actions as well as words. *See United States v. Onstad*, 4 M.J. 661, 663 (A.C.M.R.1977) ("The investigatory proceedings themselves were ample response to appellant's demand."); *cf. United States v. Tarver*, 2 M.J. 1176 (N.C.M.R.1975) (demand for trial not "answered" until 35 days later when charges were preferred).

Examining the entire period from 23 June 1980 until the trial on 25 November 1980, we are satisfied that the government proceeded with reasonable diligence. *See United States v. Tibbs*, 15 U.S.C.M.A. 350, 35 C.M.R. 322 (1965). Examining the period from the demand for immediate disposition of the charges until the trial, we are satisfied that the government responded to the demand for proceedings with dispatch, sufficient to pass muster under the "close examination of the Government's diligence" required after such a demand. *United States v. Johnson*, 1 M.J. 101, 106 (C.M.A. 1975).

The appellant also challenges the admissibility of the documentary evidence which was received over defense objection and formed the basis of his conviction for a period of absence without authority from 6 May 1980 until 23 June 1980. At trial, the government attempted to establish the appellant's absence with four documents: Prosecution Exhibit 2, a DA Form 4187 [3] which showed a duty status change from "Present for Duty" to "Absent Without Leave" effective 1700 hours 6 May 1980; Prosecution Exhibit 4, a DA Form 4187 which showed a duty status change from "Absent Without Leave" to "Dropped from Unit Rolls" effective 1700 hours, 4 June 1980; Prosecution Exhibit 5, an attesting certificate for Prosecution Exhibit 6; and Prosecution Exhibit 6, a DA Form 4187 which showed a duty status change from "Dropped From the Rolls" to "Present for Duty" effective 0700 hours, 23 June 1980.

Prosecution Exhibits 2 and 4 were verified by a Staff Sergeant Hardrick, Jr. However, at the time that the exhibits were prepared, only officers and noncommissioned officers in the grades of E–7 and above could be authorized to verify duty status changes on DA Form 4187.[4] A staff sergeant serves in pay grade E–6. Army Regulation 600–20, Personnel—General, Army Command Policy and Procedures, 15 October 1980, Table 1–1. Thus, as Sergeant Hardrick was not an authorized "verifier," neither exhibit was prepared in accordance with Army regulation. The appellant objected to their admission under Military Rules of Evidence 803(8), on the ground that they were not prepared "by a person within the scope of the person's official duties." The military judge sustained the objection.

However, the military judge admitted the documents as "business records" under Rule

---

3. Department of the Army Form 4187, "Personnel Action," 1 May 1974.

4. *See* Army Regulation 680–1, Personnel Information Systems, Morning Report, Reports Control Symbol AG–140 (R5), 11 September 1969, as amended by Change 8, 21 February 1975, paragraph 5–9f. The regulation was subse-

quently amended to authorize an enlisted member in the grade of E–6 to verify DA Form 4187. *See* Army Regulation 680–1, Personnel Information Systems, Unit Strength Accounting and Reporting, 1 October 1978, Interim Change 104, 17 July 1981, paragraph 2–3a (1).

803(6). Contrary to the appellant's assertion, we hold that the military judge was correct.

■ The deficiency which prevented the document from qualifying as an official record, *i.e.*, the verifying official's lack of authority due to his military grade, does not preclude it from being admitted as a business entry so long as the prerequisites for a business entry are met. *See United States v. Mullins*, 47 C.M.R. 828 (N.C.M.R.1973) (service entry signed by a first class petty officer admissible as business entry even though regulation required that it be signed by no one below the grade of chief petty officer); *United States v. Roberson*, 12 C.M.R. 768 (A.F.B.R.) (rehearing), *pet. denied*, 13 C.M.R. 142 (C.M.A.1953) (morning report signed by adjutant instead of commander as required by regulations admissible as business entry).

Rule 803(6) specifically authorizes the admission of "morning reports and other personnel accountability documents." In order to lay the foundation for the admission of a DA Form 4187 under this rule, the offering party must establish that the document was "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation...." The foundation may be established "by the testimony of the custodian or other qualified witness."

■ The prosecution called Sergeant First Class Smith, the chief legal clerk at the Personnel Control Facility at Fort Dix, to establish the foundation for the documents. We do not believe that Sergeant Smith was the "custodian" of the records as that term is used in Rule 803(6), even though his duty was to maintain custody of the personnel records and documentation supporting the charges against personnel awaiting disposition of unauthorized absences. The temporary possession of records for use in a court-martial proceeding does not make the holder a custodian. *See United States v. Stone*, 13 U.S.C.M.A. 52, 32 C.M.R. 52 (1962) (trial counsel not a custodian of personnel records signed out to him for use at a court-martial).

■ However, we believe that Sergeant Smith was a "qualified witness" within the meaning of Rule 803(6). A qualified witness for a business entry is one who is "intimately familiar with the internal workings of an enterprise." *United States v. Wilson*, 1 M.J. 325, 328 (C.M.A.1976). Sergeant Smith testified that virtually every case file in the Personnel Control Facility involves DA Forms 4187. He demonstrated intimate familiarity with the regulations prescribing the preparation, use and maintenance of DA Forms 4187. Finally he identified Prosecution Exhibits 2 and 4 as the DA Forms 4187 which had been received from the appellant's former unit from which he had absented himself, which were included in the appellant's case file, and which were prepared properly except for the grade of the verifying authority.

We find that Sergeant Smith's familiarity with Prosecution Exhibits 2 and 4 was sufficient to make him a "qualified witness" within the meaning of Rule 803(6). We find further that his testimony established that the exhibits were prepared as part of a "regular practice" common to all Army units,[5] and that they were received by Sergeant Smith in the ordinary course of business. Hence we conclude that Sergeant Smith's testimony was sufficient to support the admission of Prosecution Exhibits 2 and 4 under Rule 803(6).

The findings of guilty and the sentence are affirmed.

Senior Judge CARNE and Judge O'DONNELL concur.

---

5. We note that, unlike the military police investigator in *United States v. Wilson*, 1 M.J. 325 (C.M.A.1976), Sergeant Smith was not attempting to perfect his case. His duties were clerical, not investigatory. Furthermore, unlike the pawn tickets at issue in *Wilson*, the preparation, maintenance and use of DA Forms 4187 are prescribed in detail by Army Regulation 680–1 and DA Pamphlet 600–8, Military Personnel Office Management and Administrative Procedures, 31 May 1971, which leave virtually no room for local variation.