**UNITED STATES, Appellee,**

v.

**Staff Sergeant Donald E. McCALLISTER, Jr., 235–02–3099, United States Army, Appellant.**

**CM 448748.**

U.S. Army Court of Military Review.

15 Aug. 1987.

For Appellant: Captain William E. Slade, JAGC (argued), Lieutenant Colonel Joel D. Miller, JAGC, Captain Stewart C. Hudson, JAGC (on brief).

For Appellee: Captain Bryant G. Snee, JAGC (argued), Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Denise K. Vowell, JAGC, Captain Margaret A. Schuyler, JAGC (on brief).

Before RABY,* CARMICHAEL and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

CARMICHAEL, Judge:

Appellant was tried by a military judge sitting as a general court-martial. Although charged with desertion, as well as numerous larcenies and dishonorable failures to pay debts, appellant was convicted of only two offenses—the lesser included offenses of absence without leave and wrongful appropriation of personal property. He was sentenced to a bad-conduct discharge, confinement for ten months, forfeiture of all pay and allowances, and reduction to the grade of Private E-1. The convening authority approved the sentence.

At trial, appellant moved for dismissal of all charges and specifications on the ground that he had been denied his right to a speedy trial. The military judge denied this motion and subsequently, during the

* Senior Judge Kenneth A. Raby took final action in this case prior to his retirement.

sentencing proceedings, denied appellant's motion for sentence relief because of pretrial confinement that was alleged to be illegal. These two rulings are before us on appeal. This court heard oral argument on the issue of denial of speedy trial, and we will confine our opinion to a discussion of that issue. Briefly stated, however, we find that appellant was denied a speedy trial with regard to the offense of absence without leave (AWOL), but afforded a speedy trial with regard to the remaining offense of wrongful appropriation. As for the conditions of confinement, we find appellant's pretrial confinement at the Cumberland County, North Carolina, jail was legal. *See United States v. Daniels*, 23 M.J. 867 (A.C.M.R. 1987) (accused's confinement in Cumberland County jail met the standards of Article 13, UCMJ, 10 U.S.C. § 813, and did not constitute pretrial punishment).

SPEEDY TRIAL

A. *Facts.*

Since the issue focuses solely on government action, or lack thereof, before trial, a chronology reflecting the case's pretrial processing is set forth. The evidence of record establishes the following occurrences on the dates indicated.

On 24 October 1985, appellant was apprehended by civilian authorities and held at the Putnam County, West Virginia, jail. Upon being told of appellant's apprehension, Army authorities requested that appellant be held for the Army due to his AWOL status. Putnam County was about 300 miles from Fort Bragg, North Carolina, the location of appellant's former unit. On 31 October, appellant was released to the AWOL apprehension team.

On 1 November, appellant was transported to the Fort Dix, New Jersey, Personnel Control Facility (PCF), and remained there until 7 November. The Fort Dix PCF is located on the second floor of a three-story building, which is surrounded by a six-foot fence. Members assigned to the PCF are restricted to a bay between sixty to seventy feet in length. Appellant could not leave the second floor except when on work detail, or when he obtained permission to go to the first floor to get a soft drink or use the telephone. Members were escorted to the dining hall and to get haircuts. The PCF staff was present during the day and a charge of quarters (CQ) at night. Alarms on the double doors leading out of the bay where the members slept were activated at 2200 hours each evening. Members were allowed visitors in the CQ office.

On 7 November, appellant was released to the military police and confined overnight in a detention cell at Fort Hamilton, New York. Also on this date, appellant's company commander at Fort Bragg made a written request for pretrial confinement, based not only on an alleged AWOL, but additional allegations that appellant had borrowed money from soldiers, and sold equipment that he did not own to soldiers.[1]

On 8 November, appellant was returned to Fort Bragg and placed in pretrial confinement at the Cumberland County jail. On 12 November, appellant made an oral demand for speedy trial. On 14 November, a written demand for speedy trial was made. On 18 November, the desertion charge was preferred against appellant.

On 19 November, appellant's unit commander initiated an investigation under the provisions of Army Regulation 15–6[2] with a view toward determining whether there was evidence to substantiate any additional

---

1. Although there had been complaints about these activities, no preliminary investigation was initiated by the unit commander during appellant's unauthorized absence.

2. Boards, Commissions and Committees: Procedures for Investigating Officers and Boards of Officers (24 Aug. 1977) (Cl, 15 Jun. 1981) [hereinafter AR 15–6]. We note that the provisions of this regulation normally are not intended to apply to investigations conducted under the authority of either the Uniform Code of Military Justice or the Manual for Courts-Martial. Army Regulation 27–10, Legal Services: Military Justice, para. 1–1 (25 Sept. 1986). Preliminary inquiry into alleged violations of the Uniform Code of Military Justice is governed by the Rules for Courts-Martial. *See* Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial [hereinafter R.C.M.] 303 and the discussion thereto.

charges.[3] Sworn statements were obtained from soldiers "victimized" by appellant. This investigation was completed on or about 27 November.

On 22 November, the Article 32[4] Investigating Officer (IO) was notified to investigate the desertion charge. The IO took no action until 4 December because a note from "Brigade Legal" was attached to the Article 32 packet, stating that appellant's defense counsel was on leave until 3 December.[5] On 4 December, the IO contacted appellant's defense counsel and was informed of the defense's past demands for speedy trial. On 6 December, additional charges, consisting of numerous larcenies and dishonorable failures to pay debts, were preferred against appellant, and were forwarded to the IO.

On 8 December, the Article 32 investigation commenced. Appellant's entire unit was in Panama for jungle training from 29 November until 20 December, but witnesses could be contacted by telephone. All of the witnesses from appellant's unit testified on Sunday, 8 December, from Panama, by means of a speaker fitted over the telephone. These were essentially the same witnesses who had given sworn statements during the AR 15-6 investigation. The remaining Article 32 sessions were held between 11 and 13 December. On 6 January 1986, the IO submitted the final investigative report. On 14 January, the convening authority referred the original and additional charges for trial by general court-martial.

On 27 January, the date of the initial trial session, the Army was, by our calculation, responsible for ninety-five days of pretrial processing time in appellant's case. The speedy trial issue was litigated during this Article 39(a), UCMJ, session, but the military judge concluded that he did not have sufficient facts to resolve the issue. On his own initiative, and despite defense counsel's objection, the military judge directed the trial counsel to gather additional evidence relating to the events between 1 and 7 November and continued the case until 3 February. He stated that this time would not be chargeable to the government and that appellant would remain in pretrial confinement.

On 3 February, litigation of the speedy trial motion resumed. The defense counsel objected to the additional time allowed trial counsel to obtain evidence and requested that the time be charged to the government. The military judge denied the request and, after additional evidence was presented, denied the speedy trial motion.

In denying the motion, the military judge made the following pertinent factual findings:

1. Appellant was detained in a civilian jail from 24 to 31 October 1985 at the Army's request. This was not an unreasonable length of time for the Army to arrange for appellant's return to military control.

2. Appellant's restriction to the Fort Dix PCF was not tantamount to either arrest or confinement because appellant was free to leave the facility. Thus, appellant was not continuously in pretrial confinement.

3. Assuming *arguendo* appellant's time in the Fort Dix PCF did constitute arrest or confinement, and appellant was therefore continuously confined for more than ninety days prior to trial, the government clearly met its heavy burden of due diligence in proceeding to trial, and in protecting appellant's rights by assuring trial on all known charges and by eliminating unsubstantiated allegations.

4. Upon appellant's return to Fort Bragg, sufficient information was available to support the charge of desertion, but not to ascertain what additional charges, if any, should be brought against appellant.

5. The period from 22 November to 3 December 1985, during which appellant's defense counsel was on leave, did not consti-

---

3. The investigation was delayed while the unit was training in the field from 12 to 17 November. All witnesses were from appellant's unit.

4. Uniform Code of Military Justice, 10 U.S.C. sec. 832 (1982) [hereinafter UCMJ].

5. Appellant's defense counsel was on leave from 22 November to 3 December.

tute defense delay, but was a factor to be considered in determining whether the government had met its burden of due diligence.

6. Appellant was continuously in pretrial confinement from 7 November 1985 to 27 January 1986. Since this was a period of less than ninety days, there was no violation of the *Burton*[6] rule as codified by R.C.M. 707(d). The delay until 3 February was reasonable since the trial court was attempting to ascertain specific facts in order to protect appellant's right to a speedy trial. This period was not chargeable to the government.

7. Appellant suffered no prejudice as a result of the delay and there was no oppressive design on the part of the government.

### B. *Discussion of Legal Principles.*

Under the UCMJ, the government is bound by rigorous procedural standards in proceeding to trial once it places an accused in pretrial arrest or confinement. "When any person ... is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." UCMJ art. 10, 10 U.S.C. § 810. "Arrest or confinement will ... trigger the speedy trial guarantee of the Sixth Amendment and activate the presumption established in *Burton*." *United States v. Acireno,* 15 M.J. 570, 572 (A.C.M.R.1982) (citation omitted). The so-called *Burton* presumption is the presumption of an Article 10 violation when, in the absence of a defense request for delay, pretrial arrest or confinement exceeds ninety days.[7] "[T]his presumption will place a heavy burden on the Government to show diligence, and in the absence of such a showing the charges should be dismissed." *United States v. Burton,* 44 C.M.R. at 172.

While recognizing that Article 10 reiterates the speedy trial guarantees of the sixth amendment, the United States Court of Military Appeals historically has interpreted Article 10 as holding the government to a more demanding standard in proceeding to trial than does the sixth amendment. *Id.* at 171. Aside from its establishment of a ninety-day rule based on Article 10, *Burton* announced a second rule to protect an accused's right to a speedy trial. "When the defense requests a speedy disposition of the charges, the Government must respond to the request and either proceed immediately or show adequate cause for any further delay. A failure to respond to a request for a prompt trial may justify extraordinary relief." *Id.* at 172 (footnote and citation omitted). This second prong of *Burton,* the "demand" rule, is like the ninety-day rule in that it only comes into play when an accused is placed in pretrial arrest or confinement, or in pretrial restraint tantamount to arrest or confinement. Even from this cursory review of the standards that apply when an accused is placed in pretrial arrest or confinement, it is clear that the resolution of a speedy trial issue today in military cases is not a simple task.

The growing complexity of speedy trial rules and the need for the procedural equivalent of a ball of twine to prevent military practitioners and judges from becoming hopelessly lost in this legal maze was recognized by the drafters of the 1984 Manual for Courts-Martial. Their attempt to bring procedural uniformity to the resolution of speedy trial issues is R.C.M. 707. The broad sweep of this rule establishes a 120-day standard which applies when the accused either is notified of preferred charges or is subject to pretrial restraint, whichever occurs earlier. R.C.M. 707(a). The rule provides additional guidance regarding the government's accountability, the effect of multiple charges, and the periods of delay which may be excluded from

---

6. *United States v. Burton,* 44 C.M.R. 166 (C.M.A. 1971).

7. The *Burton* three-month speedy trial rule subsequently was changed to a ninety-day rule in

the interest of uniformity and stability. *See United States v. Driver,* 49 C.M.R. 376 (C.M.A. 1974).

its 120–day standard as well as the ninety-day standard prescribed by subsection (d). Subsection (d) of the rule is based, in part, on Article 10, UCMJ, and its application is triggered by pretrial arrest or confinement. Since R.C.M. 707 allows the government considerably more latitude in excluding periods of delay than *United States v. Burton,* 44 C.M.R. 166, when determining whether the ninety-day standard has been violated, it appears to strike a fairer balance between the right of the accused to a speedy trial and the right of the military community to effective law enforcement. Further, R.C.M. 707, unlike *Burton,* does not prescribe a demand rule.

However, any hope that the drafters may have had of the Court of Military Appeals adopting R.C.M. 707 in place of *Burton* has yet to be realized. Neither the ninety-day prong nor the "demand" prong of *Burton* has been expressly renounced by the Court. *See United States v. Harvey,* 23 M.J. 280 (C.M.A.1986) (memorandum opinion and order) (ascertains absence of Presidential intent to overrule *Burton* by promulgating R.C.M. 707 and applies "demand" prong where accused requests speedy disposition of charges).[8] Thus, with the additional corridors created by the Court of Military Appeals' separate application of R.C.M. 707, most military counsel and judges will find that their procedural ball of twine has become unraveled long before they discover a successful route through the speedy trial labyrinth. They now are confronted by five separate speedy trial standards—two in R.C.M. 707, two in *Burton,* and the sixth amendment guarantee.

### C. Resolution of Speedy Trial Issue by this Court.

#### Absence Without Leave (AWOL).

To resolve this particular assignment of error, we initially will focus on the offense of desertion[9] and whether, under the nine-

ty-day standard of R.C.M. 707(d), appellant was afforded a speedy trial with respect to that offense.

We agree with the military judge's finding that the government's accountability for speedy trial purposes commenced when appellant was held in a civilian jail at the Army's request. *See* R.C.M. 707(b)(1) (day one for speedy trial accountability is the day following imposition of pretrial restraint). Thus, the speedy trial "clock" began to run on 25 October 1985. We also are satisfied that the Army wanted appellant held at that time because he was in an AWOL status, not because of any other possible violations of the UCMJ. From 25 October then, the government had ninety days to bring appellant to trial on the offense that it subsequently charged as desertion.

Although we normally will not substitute our judgment for that of the military judge's where there is support in the record for his finding, *see United States v. Gregory,* 21 M.J. 952, 954 (A.C.M.R.) (review of military judge's discretion in making factual determinations), *aff'd,* 23 M.J. 246 (C.M.A.1986) (summary disposition), we find no support for the finding that appellant was free to leave the Fort Dix Personnel Control Facility during the period of 1–6 November 1985. Indeed, despite the label of restriction used by the PCF staff, we find the conditions of appellant's pretrial restraint while at Fort Dix more closely resembled arrest. Any attempt to leave the PCF by appellant would have been reported to the military police and likely resulted in his apprehension. Based on the record, we expressly find that appellant was in an arrest status as defined by R.C.M. 304(a)(3) from 1 through 6 November 1985. UCMJ art. 66(c), 10 U.S.C. § 866(c). *See United States v. McDowell,* 19 M.J. 937, 939–40 (A.C.M.R.1985) (restric-

---

**8.** *But see United States v. Cherok,* 22 M.J. 438, 439 & n. (C.M.A.1986) (R.C.M. 707 now provides a numerical standard for all trials); *United States v. McElyea,* 22 M.J. 863, 864 n. 1 (A.C. M.R.) (R.C.M. 707(d) is an effective substitute for the *Burton* rule, which now is obsolete), *petition denied,* 23 M.J. 286 (C.M.A.1986).

**9.** Although charged with desertion, *inter alia,* appellant was convicted of the lesser included offense of absence without leave.

tion of accused to barracks found tantamount to confinement for speedy trial purposes); *United States v. Acireno*, 15 M.J. at 572 (accused's restriction tantamount to arrest where he was restricted to two floors of a four-story barracks). Considering the government's objective to maintain control of appellant, together with the conditions of appellant's restraint, the ninety-day period under R.C.M. 707(d) continued to run the entire time appellant was at Fort Dix.

Except for the time at Fort Dix, which we have found tantamount to arrest, appellant was physically restrained prior to his trial. By our computation, the elapsed time for which the government is responsible under R.C.M. 707(d) is 102 days, that being the period from 25 October 1985 through 3 February 1986.

Government appellate counsel, both in his brief and in oral argument, contends that certain periods are excludable in determining whether R.C.M. 707 has been violated. *See* R.C.M. 707(c) (list of periods that can be excluded when determining whether rule's numerical standards have been exceeded). We agree that one such excludable period is the delay resulting from appellant's absence. R.C.M. 707(c)(6). We reject, however, the notion that the mere listing of this exclusion in subsection (c) somehow relieves the government of showing that it exercised due diligence in returning appellant to military control. Appellant was 300 miles from the unit and installation that he had absented himself from when the government requested that he be retained in civilian confinement. The government's request was made on 24 October and appellant was returned to Fort Bragg on 8 November, representing fifteen days of "accountable" time under subsection (d). The evidence of record pertaining to this period shows little more than appellant being eventually returned to Fort Bragg by way of Fort Dix and Fort Hamilton. While the government may have been

acting reasonably under the circumstances, it offered no explanation of its actions at trial. Suffice it to say that, in the absence of any competent evidence, the government traveled a circuitous route in returning appellant to Fort Bragg.

■■■ We believe that the Navy-Marine Court of Military Review is correct to the extent it holds that "exclusion (6) [of R.C.M. 707(c)] contemplates the period of actual absence plus the time it takes to return the accused to his command, or the command to which reassigned, ..." *United States v. Lilly*, 22 M.J. 620 (N.M.C.M.R. 1986). As for the time it takes to return the accused to the appropriate unit, that portion which reasonably can be determined to have resulted from the accused's absence should be excluded. *See United States v. Turk*, 24 M.J. 277, 278 (C.M.A. 1987) (naval command unique to extent often aboard ship at sea; consequently, for speedy trial purposes, time-lapse resulting from accused's unauthorized absence from ship not charged to government *as a matter of law*). Unlike the situation in *Turk*, there is nothing unique in the nature of appellant's command which hindered his return to it. Time should not be excluded which, rather than resulting from the accused's absence, results from the government's failure to exercise due diligence in returning the accused to the appropriate unit. We cannot conclude that the government acted with due diligence from a silent record.[10]

■■■ Noting that 25 October 1985, the first day of the government's accountability under the ninety-day rule, was a Friday and making allowances for the weekend and the 300 miles to Fort Bragg, we believe that three days was a reasonable time to pick up appellant and return him to Fort Bragg. This reduces the period in subsection (d) of this rule to ninety-nine days. We stress that a longer period of time may have been excludable had the government

---

10. We believe the government normally should bear the burden of establishing the reasonableness of the time required to return an accused to his unit. *But see United States v. Smith*, 50 C.M.R. 237, 239 (A.C.M.R.1975) (six days is a reasonable time to return a soldier to an Army installation 400 miles from the civilian jail where he had been confined; government presented no evidence).

introduced evidence on this point. The only other period of delay we find to be deductible is one day for the Article 39(a) session held on 27 January 1986. R.C.M. 707(c)(1)(C).

Reviewing other categories of exclusions, we find none which apply. No delays were requested by the prosecution, nor was it entitled to any exclusions for the delays that did occur. Trial counsel was provided timely notice of the speedy trial motion, and hence was aware that the government had the evidentiary burden of demonstrating due diligence in proceeding to trial. When the trial counsel indicated that he had no evidence of what had occurred during the period appellant was at Fort Dix, the military judge on his own motion directed him to obtain such evidence and then continued the case until 3 February 1986. The sole basis for this delay was the trial counsel's failure to marshal evidence regarding periods of time that the military judge concluded were critical. On six occasions during the 27 January Article 39(a) session, the military judge informed the trial counsel that he was not providing the necessary evidence for the judge to make an intelligent ruling on the speedy trial motion.[11] Trial counsel, on the other hand, offered no explanation of why he was unprepared to present evidence about what occurred prior to 8 November 1985, the date on which appellant was returned to Fort Bragg. Thus, again bearing in mind that appellate courts normally will give due deference to the trial judge's findings, we conclude that it was the government's lack of reasonable diligence with respect to meeting its burden of proof which resulted in the continuance.[12] Since

it was government neglect that delayed the trial until 3 February, we find that the time under R.C.M. 707(d) continued to run until that date. *See* R.C.M. 707(b)(3)(B) (time stops running when evidence presented on merits).

With regard to appellant's defense counsel's leave from 22 November to 3 December 1985, we adopt the trial judge's finding that this action did not constitute defense delay. While the "gentlemanly scheduling" of Article 32 investigations and cases may be a revered tradition in the Navy, *see United States v. White,* 22 M.J. 631, 634 n. 5 (N.M.C.M.R.1986), *petition denied* 24 M.J. 61 (C.M.A.1987), we recommend Army trial counsel rely on formal scheduling practices. Otherwise, since informal exchanges seldom put defense counsel in the position of either having to request or consent to a delay, the government can anticipate being held responsible for any scheduling delays. The trial counsel in this case may have fared better on the speedy trial motion had he contacted the Investigating Officer and the defense counsel on 21 November. Then, it might have been possible to schedule the Article 32 hearing for a definite date, forcing the defense to choose between requesting a delay or canceling leave. The Court of Military Appeals expressed its views regarding the scheduling of cases in *United States v. Burris,* 21 M.J. 140 (C.M.A.1985). The Court recommended that all requests for delay be acted upon by the convening authority prior to referral of charges, or by the trial judge after referral, thus establishing "as a matter of record who request-

---

11. Based on the records of trial reviewed by this court involving speedy trial issues, we question whether all trial counsel fully understand the burden that the government carries when a speedy trial motion is made. It is the government, once the motion is made, that has the burden of proving by legal and competent evidence that it proceeded to trial with reasonable diligence. Oral or written demands for speedy trial must not be ignored. They must be answered and the government must avoid unreasonable delay in bringing the accused to trial. Any delay requested or consented to by the defense should be made a matter of record.

Generally, we would recommend that all military counsel read Major Wittmayer's excellent article on speedy trial entitled "Rule For Courts-Martial 707: The 1984 Manual For Courts-Martial Speedy Trial Rule," which appears in volume 116 of the Military Law Review at pages 221–267.

12. Even a proposed stipulation of fact relating to the speedy trial motion from which the defense counsel withdrew would not have provided additional facts about what occurred before appellant was returned to Fort Bragg.

ed what delay and for what reason." [13] *Id.* at 145. Defense acquiescence in the government's scheduling of cases will not be treated by this court as a defense delay for the purposes of determining whether the government has carried its speedy trial burden. *United States v. Wolzok,* 1 M.J. 125 (C.M.A.1975). In the absence of evidence that a delay was requested by the defense, the record at least must show that the defense expressly agreed to the trial being delayed. The defense counsel's leave in this case, taken after two demands for speedy trial and before a date was set for the Article 32 investigation, does not qualify as delay "at the request or with the consent of the defense." R.C.M. 707(c)(3).

Our calculations, after deducting the periods which are excludable under subsection (c), indicate that the accused was held in pretrial confinement for ninety-eight days on the desertion charge. Since there was no showing of extraordinary circumstances justifying extension of the subsection (d) ninety-day rule, we find that appellant was denied his right to a speedy trial with respect to the lesser included offense of AWOL.

### Wrongful Appropriation

 When multiple specifications are present, the proceedings as to each must be considered separately in resolving a speedy trial issue. *United States v. Talavera,* 8 M.J. 14, 17 (C.M.A.1979). Hence, we now turn to the remaining offense of which appellant was convicted—wrongful appropriation. Appellant was placed in pretrial confinement in the Cumberland County, North Carolina, jail when returned to Fort Bragg by military police escort. This occurred on 8 November 1985. In part, the written request for pretrial confinement refers to additional charges to be preferred against appellant upon the completion of a command investigation. The description of these additional charges leaves no doubt that the wrongful appropri-

ation charge now before us was one of the bases justifying appellant's confinement. On this particular charge, then, we believe the government's accountability began on 9 November. *See* R.C.M. 707(b)(4) (where multiple charges, inception for each determined when restraint imposed on basis of that offense); *see also United States v. Boden,* 21 M.J. 916 (A.C.M.R.1986) (When an accused is in pretrial confinement, the government is accountable for speedy trial purposes for additional charges when it possesses substantial information upon which to base preferral of such charges.). On 3 February 1986, the date his trial began, appellant had been in pretrial confinement a total of eighty-seven days. One of those days was devoted to a pretrial motions session and can be excluded. Thus, the numerical standards of R.C.M. 707(a) and (d) were not violated, nor was the ninety-day prong of *United States v. Burton,* 44 C.M.R. 166.

However, it is the "demand" prong of *Burton* which the government appears not to have heeded. Appellant made an oral demand for speedy trial on 12 November 1985 and a written demand on 14 November. Inexplicably, the government did not respond to these demands. The Court of Military Appeals in *Burton* expressed dissatisfaction with the government's failure to respond to a demand for speedy trial.

> Failure of the investigating officer and his superiors to furnish the appellant and his counsel a response to their motion for a prompt trial is more than discourteous, it is a neglect of duty. When the defense alertly avoids what could otherwise be a waiver of the speedy trial issue by urging prompt trial, the Government is on notice that delays from that point forward are subject to close scrutiny and must be abundantly justified.

*Burton,* 44 C.M.R. at 171.

 The government's failure to respond to the defense demands for speedy

---

13. We do not believe that formal scheduling and cordial relations between counsel are mutually exclusive. We encourage Army and civilian trial attorneys to exercise professional courtesy as well as responsibility in their dealings with each

other. However, as participants in an adversarial process, counsel must be careful not to confuse professional courtesy with professional neglect.

trial requires close scrutiny of the government for due diligence from that point forward. *United States v. Johnson*, 1 M.J. 101, 106 (C.M.A.1975). Because the "demand" prong of *Burton* is highly susceptible to being applied subjectively, with a view more toward punishing the government than affording the accused the right to a speedy trial, it is critical that a proper balance be struck. "The right of a speedy trial is necessarily relative. It is consistent with delays and depends on circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972) (citation omitted). Use of the four-part "functional analysis" adopted by the United States Supreme Court in *Barker v. Wingo* brings objectivity to the review of speedy trial demands. *See United States v. Tarver*, 2 M.J. 1176, 1180 (N.C.M.R. 1975); *cf. United States v. Amundson*, 48 C.M.R. 914, 917 (N.C.M.R.1974) (utilizing *Barker* analysis in case in which there was no pretrial restraint), *aff'd*, 49 C.M.R. 598 (C.M.A.1975). The *Barker* test involves examination of the length of the delay, the reasons for the delay, specific prejudice to the accused, and the accused's assertion of his right to speedy trial.

■ Thus, in conjunction with the *Burton* demand rule, we will apply the *Barker* analysis in determining whether appellant was afforded a speedy trial with regard to his conviction of wrongful appropriation. We adopt this methodology because we are convinced that additional criteria are needed to preclude the second prong of *Burton* from being applied arbitrarily. Unless the demand rule's application is ameliorated, any delay determined to be unreasonable following a demand for trial, even a delay of relatively short duration, raises the specter of dismissal. While fully recognizing that the *Burton* rule is a viable precedent until overturned by the Court of Military Appeals or Congress, we do not believe the Court of Military Appeals intends that the rule produce a dismissal in a case where the accused's right to a speedy trial has not

been violated. Somewhere in this equation, once the accused's rights have been adequately safeguarded, the interests of both the command and the military community in a justice system that is reliable and effective must be adequately served by military appellate courts.

■ As we have already noted, the eighty-six days for which the government is accountable comports with both R.C.M. 707(d) and the first prong of *Burton*. The reasons for delay are more complex. Appellant was returned to Fort Bragg on 8 November 1985 and placed in pretrial confinement partly on the basis of allegations of larceny. These allegations were investigated by appellant's commander, who then preferred additional charges against appellant on 8 December. We do not find the period from 8 November to 8 December to be one of unreasonable delay. On 8 December, the Article 32 investigation began with respect to both the original and the additional charges. The Investigating Officer's report was submitted on 6 January and the trial was scheduled for three weeks thereafter. This pretrial processing, although no model of efficiency, was, in our view, sufficient. There certainly was no governmental intent to hinder the defense. Rather, delays appear to have been generated primarily by trial counsel's lack of experience, as evidenced by his lack of communication with the defense counsel prior to trial. As such, we conclude that the factors of length of delay and the reasons therefor do not weigh so heavily against the government as to require dismissal. *See Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192.

Next, applying the third prong of *Barker*, we examine the specific prejudice to appellant as a result of the delay. We find no hindrance of appellant's defense resulting from the delay, and thus no prejudice in that respect. Further, appellant's pretrial confinement, although prejudicial, was clearly proper under the circumstances. Such prejudice to appellant is mitigated in

part by his receipt of administrative credit for pretrial confinement.[14]

�no Last, we examine appellant's unanswered demands for speedy trial. The purpose of the demand prong of *Burton* is to generate action, not paperwork. *United States v. Williams,* 12 M.J. 894, 896 (A.C. M.R.1982). A demand for speedy trial may be answered by actions, as well as words. *Id.* (citing *United States v. Onstad,* 4 M.J. 661, 663 (A.C.M.R.1977)). In the case at bar, the Article 32 Investigating Officer was appointed shortly after appellant's demand for speedy trial. We find that such action was a sufficient response by the government to appellant's demands, and evidence of the government's due diligence toward a prompt disposition of the charges. *See United States v. Williams; United States v. Onstad,* both *supra.*

In weighing these factors in light of the *Burton* demand rule, we conclude that the government proceeded with due diligence with respect to the wrongful appropriation charge of which appellant was convicted.[15] In our opinion, appellant's right to a speedy trial was not abridged by the single factor of unanswered demands for a speedy trial.[16]

### D. *Conclusion.*

We have considered those assignments of error personally asserted by appellant and find them to be without merit.

The findings of guilty as to the Charge and its Specification are set aside, and that charge and specification are dismissed. The findings of guilty as to the remaining charge and specification—Additional Charge I and amended Specification 3 of Additional Charge I—are affirmed.

The sentence is set aside. A rehearing on sentence may be ordered by the same or a different convening authority.

Judge ROBBLEE concurs.

Senior Judge RABY, concurring in part and dissenting in part:

I concur with the opinion of my brethren that appellant was denied his right of speedy trial regarding the offense of absence without leave (AWOL) and that Article 13, UCMJ, was not violated by the less than model conditions of appellant's pretrial confinement in the Cumberland County jail. I dissent, however, as to my brothers' conclusion that appellant was not denied the right of speedy trial regarding the offense of wrongful appropriation.

At the outset let me say that this appears to me to be the most negligently processed case that I can recall reviewing during my three years on the appellate bench. The negligence began upon appellant's apprehension and continued until the military judge, in apparent desperation and unconcealed frustration, virtually assumed the functions of a Chief of Criminal Law, teaching trial counsel, in at least rough "blueprint" fashion, the procedures required to overcome defense's speedy trial motion.

Next, let me state that at one time I would have voted to sustain the wrongful appropriation conviction because I believed the *Burton* rule to be obsolete. *See generally United States v. McElyea,* 22 M.J.

---

14. We note that the military judge, based on appellant's pretrial confinement, directed that appellant be given ninety-eight days of administrative credit against any sentence to confinement which might be adjudged.

15. These facts bring to mind the words of Chief Judge Everett when he wrote: "I find it distasteful to salvage a case which the Government has bungled so monumentally." *United States v. Cherok,* 22 M.J. at 440 (Everett, C.J., concurring in result). We share the Chief Judge's sentiment based on the neglectful manner in which the government dealt with the speedy trial issue in this case. Despite such governmental neglect, however, we do not find a violation of appellant's right to a speedy trial with respect to

the wrongful appropriation offense. Moreover, contrary to the observation of our brother in the dissenting portion of his opinion, we do not believe we have reached this result through the adoption of a legal gimmick—the *Barker v. Wingo* four-part analysis—which in effect destroys the *Burton* demand rule.

16. We certainly do not condone the government's lack of a specific response to appellant's demands for speedy trial. Such failure of action will continue to be closely scrutinized by this court. We will not permit an accused's rights to be overridden because a prosecutor lacked experience or was not provided proper guidance.

863, 864 n. 1 (A.C.M.R.) (R.C.M. 707(d) is an effective substitute for *Burton* rule; henceforth, *Burton* is obsolete.), *petition denied*, 23 M.J. 286 (C.M.A 1986). But, in *United States v. Harvey*, 23 M.J. 280 (C.M. A.1986) (memorandum opinion and order), the Court applies the "demand" prong of *Burton* after stating that they could ascertain no Presidential intent to displace *Burton* by promulgating R.C.M. 707 in the Manual for Courts-Martial, United States, 1984.[17] Thus, it appears that I can no longer rely on the dicta of *McElyea*. This being the case, I am compelled to determine whether the government violated the "demand" prong of the *Burton* rule. I believe that they did.

First, although appellant had requested speedy trial in writing on 14 November 1985, his speedy trial motions were not resolved until 3 February 1986. During this entire period, appellant remained in pretrial confinement. Moreover, at no time did the government give the appellant any type of response to his speedy trial demands. Unlike my brothers, *I find that the government's failure to provide any form of response to appellant's speedy trial demand while continuing to keep him confined in a civilian jail under conditions that at least raised a viable issue regarding the legality of his pretrial confinement, constituted a gross departure from the degree of diligence which normally occurs in like cases.* This blatant infraction alone should, in this instance, support dismissal of the wrongful appropriation charge. However, the government's conduct in processing the wrongful appropriation charge has other glaring deficiencies. For example, although the Article 32 Investigating Officer was then aware of appellant's speedy trial

demand, he did not file his report until 6 January 1986—a total of twenty-four days after his investigation was completed. Further, in the face of the known delay, the trial counsel was not adequately prepared at the January Article 39(a) session to carry the government's burden of proof on the speedy trial issue, even though he had been duly notified of the issue.

Frankly, viewing all the above facts, I can hardly think of a more aggravated failure to respond to, and thus deny, a speedy trial demand.

I also have some grave reservations that the government could justify its position by relying primarily on the *Barker v. Wingo* [18] balancing test. I cannot support my brothers' election to apply the *Barker v. Wingo* balancing test to the *Burton* "demand" rule. It seems to me that such a procedure basically destroys the intended viability of the demand test and replaces it, in effect, with the *Barker v. Wingo* test. If *Burton* is to be authoritatively overturned, it should not be done in this ingenious fashion; it should be decisively laid to rest by positive Congressional, Presidential or judicial action.[19]

Finally, in my view, the majority opinion in this case renders the *Burton* demand rule ineffective as a procedure for adequately protecting an accused's sixth amendment and Article 10 rights. Accordingly, if the results of this case ultimately are sustained, perhaps the dictum in *McElyea* that *Burton* is obsolete shall prove to be an accurate prophesy after all.

---

17. Of course if *Burton, per se,* creates some special right of military due process to a speedy trial or inherently embodies the right to a speedy trial found in the sixth amendment of the United States Constitution, the President could not override the procedure by the promulgation of speedy trial rules. But, if *Burton* is basically a rule of procedure to preserve an accused's constitutional and statutory speedy trial rights, it is clearly subject to being rendered void by the President's promulgation of his own procedures. UCMJ art. 36, 10 U.S.C. § 836. I believe *Burton* merely reflects rules of procedure designed to protect an accused's sixth

amendment and Article 10 rights. *Cf. Miranda v. Arizona*, 384 U.S. 436, 478–479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966) ("Procedural safeguards must be employed to protect the privilege [against self-incrimination].").

18. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

19. If this area of controversy cannot be satisfactorily resolved soon, legislation might prove to be most desirable.