**UNITED STATES, Appellee,**

v.

**Staff Sergeant Steven C. TURNER, United States Army, Appellant.**

**ARMY 9600603.**

U.S. Army Court of Criminal Appeals.

Feb. 26, 1998.

**514**

For Appellant: Captain Arden B. Levy, JA (argued); Major Michael E. Hatch, JA (on brief); Colonel John T. Phelps II, JA; Major Holly S.G. Coffey, JA.

For Appellee: Captain Arthur J. Coulter, JA (argued); Captain Chris A. Wendelbo, JA; Lieutenant Colonel Frederic L. Borch III, JA; Colonel Joseph E. Ross, JA (on brief).

Before GORDON, JOHNSTON, and SQUIRES, Appellate Military Judges.

## OPINION OF THE COURT

SQUIRES, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial of being absent without leave (AWOL) from his Fort Bragg, North Carolina, unit and possession of marijuana with the intent to distribute, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 912a (1988) [hereinafter UCMJ]. The officer and enlisted members sentenced him to a bad-conduct discharge, confinement for four years, forfeiture of $437.00 pay per month for four years, and reduction to Private E1. The convening authority approved the sentence.

Before us, appellant contests the sufficiency of the evidence to prove the AWOL charge. Staff Sergeant (SSG) Turner also alleges the military judge erred by failing to suppress his statements made to the Immigration and Naturalization Service (INS) border patrol agent after he had invoked his right to counsel. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), appellant asserts government misconduct for failing to produce at trial a key defense witness, Ms. Medrano, and contends the evidence is legally and factually insufficient to convict him of any drug charge. We agree that the evidence is insufficient to uphold the AWOL conviction. The other allegations of error are without merit.

## BACKGROUND

Staff Sergeant Turner's problems began when the yellow Camaro, bearing temporary North Carolina license plates, which he was driving, stopped at the Yslata Border Patrol Check Point near El Paso, Texas, on 31 October 1995. Accompanying the appellant were two women who appeared to be of Hispanic heritage. One of them, Ms. Medrano, claimed ownership of the vehicle. Staff Sergeant Turner identified himself verbally and by identification card as a member of the U.S. military.

After Ms. Medrano consented to a search of the vehicle, a K–9 (drug dog) alert, followed by a human inspection of the trunk, revealed four blocks of marijuana weighing a total of about twenty-three pounds. According to expert trial testimony, the seized marijuana had a Fayetteville, North Carolina, street value of $41,000.00.

Appellant was arrested for transporting marijuana with intent to distribute and read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d

694 (1966). Although he never specifically invoked his constitutional protections, the border patrol agents promptly ceased any questioning when SSG Turner appeared "confused."[1]

After administrative processing, appellant was lodged in a cell within the checkpoint trailer. Approximately two hours after his arrest, and subsequent to a background investigation, Immigration and Naturalization Service Agent Godshall informed SSG Turner that he had just learned SSG Turner was AWOL. Appellant responded emotionally, asking whether Agent Godshall was going to turn him over to the Army Criminal Investigation Command (CID). When Godshall replied, "Yes sir, we are," appellant pleaded, "Please don't do that, anything but that. You know, turn me over to the deputy, do whatever you want to do, just don't turn me over to CID."

At trial, the government relied on this statement by appellant and on a Department of the Army (DA) Form 4187–E, Personnel Action Form, both of which were admitted over strenuous defense objection, along with appellant's Halloween border arrest, in an attempt to prove the charged offense of desertion.[2] While the trial counsel only used appellant's statement to show guilt of the absence offense, we think it likely that the fact finders would have considered its effect on the drug offense as well. Accordingly, we will review whether it was properly admitted at trial, notwithstanding our disposition of the AWOL charge.

## STATEMENT TO AGENT GODSHALL

■ We review a military judge's findings of fact on a motion to suppress under a clearly erroneous standard and his conclusions of law under a de novo standard. *United States v. Ayala,* 43 M.J. 296, 298 (1995). Thus, we could find that the military judge abused his discretion by admitting appellant's statement if the judge's findings of

fact were clearly erroneous or his conclusions of law were incorrect.

In denying the defense's suppression motion, the military judge found that (a) Staff Sergeant Turner did not waive his *Miranda* rights; (b) any further interrogation or contact which had the functional equivalent of interrogation would have been improper; (c) Agent Godshall was an older, experienced agent and his sole purpose in telling SSG Turner that he was AWOL and would be turned over to the CID was to keep appellant "informed," since SSG Turner had been told earlier in the evening that Ms. Medrano had claimed ownership of the marijuana and it looked like SSG Turner might be free to leave;[3] and (d) the remark was not designed to elicit a response. The record unquestionably supports these findings.

■ Once a suspect invokes his *Miranda* rights in the investigation of one crime, law enforcement officials cannot question him regarding a second crime until counsel is provided. *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). However, the Supreme Court noted that, "police ... are free to inform the suspect of the facts of the second investigation as long as such communication does not constitute interrogation." *Id.* at 687, 108 S.Ct. at 2101. Furthermore, communication, exchanges, or conversations with the police that a suspect initiates can be admissible evidence. *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). The test to determine whether questioning or its functional equivalent is "interrogation" within the meaning of *Miranda,* is whether the police conduct or questioning, under the circumstances of the case, was "reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

---

1. This case is unique for this court in that it does not involve the application of Article 31, UCMJ, to alleged incriminating statements.

2. Appellant was ultimately convicted only of AWOL.

3. Although not raised by the appellant at any stage of the proceeding, we find that SSG Turner's continued detention was supported by probable cause. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

■ At issue is whether two declaratory statements, telling a suspect in a drug arrest, that (a) he is AWOL and (b) he will be turned over to CID, were designed to elicit an incriminating response. The Supreme Court has not directly answered the question of whether declaratory descriptions of incriminating evidence *per se* constitute interrogation under *Miranda.* As have the federal circuits who have faced this issue, we too reject any notion that statements by police officials to a suspect regarding the nature of evidence against him or her constitutes interrogation as a matter of law. *See United States v. Payne,* 954 F.2d 199, 203 (4th Cir. 1992). Telling appellant that he had been reported AWOL and would be turned over to a particular military law enforcement authority was relatively neutral information and should have come as no surprise to a career noncommissioned officer.

■ This is not a case where Agent Godshall resorted to trickery to get SSG Turner to change (or make up) his mind about wanting a lawyer or whether to respond to questions. *Innis* makes it clear that police attempts, whether express or implied, to get a suspect to abandon his previously demanded constitutional protections, violate *Miranda. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297. Here, as was the case in *Innis,* there was a clear break between appellant being read his rights, stating that he was "confused," and law enforcement officials terminating any questioning based on SSG Turner's "confusion," and then later informing him that he was AWOL.

■ More importantly, as the military judge found, Agent Godshall's intent was to extend to the appellant a "courtesy" and keep him informed. Agent Godshall did nothing to induce appellant to change his mind. *See United States v. Fouche,* 833 F.2d 1284, 1287 (9th Cir.1987). While absence of intent to interrogate is not determinative of whether police conduct constitutes interrogation, "substantial deference on the question of what constitutes interrogation must be paid to trial courts, who can best evaluate the

circumstances in which such statements are made and detect their coercive aspects." *Payne,* 954 F.2d at 203. *See also United States v. Soto,* 953 F.2d 263, 265 (6th Cir. 1992). Accordingly, we reject appellant's claim that the military judge erred in admitting his statement/request that he not be turned over to the CID.

## SUFFICIENCY OF AWOL EVIDENCE

■ Staff Sergeant Turner contends that the evidence adduced at trial was both legally and factually insufficient to prove the crime of absence without leave. The test for legal sufficiency is whether, when viewed in a light most favorable to the government, a rational fact finder could have found all essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having personally observed the witnesses, *we* are convinced beyond a reasonable doubt that the evidence supports appellant's guilt. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

■ To prove the inception date of appellant's unauthorized absence, the government introduced an electronically generated DA Form 4187 (Prosecution Exhibit 14). Attached thereto was a proper "Certificate of Authentication," signed by the official custodian of the Fort Bragg replacement/casual status personnel files. This DA Form 4187–E changed SSG Turner's duty status from ordinary leave to absent without leave, effective 0001 hours, 11 October 1995. The name "Thomas M. Andrejcak, CPT, AG Commanding" was typed on the form as the commander/authorized representative.[4] It was signed "for" CPT Andrejcak by an individual whose first name is "Paul" and whose penmanship prevents us from reading his last name. Following this signature, and printed with a writing instrument apparently different from that making the signature, is the notation

4. This form must be "authenticated by the unit commander or designated representatives." Army Reg. 600–8–6, Personnel–General: Person-

nel Accounting and Strength Reporting, ch. 2, sec. II (20 May 1994)[hereinafter AR 600–8–6].

"1LT, AG." The form is dated 3 November 1995.

Acknowledging that the authenticating certificate accompanying the DA Form 4187–E was proper, defense counsel objected to the document's admissibility because it was signed by an unauthorized party. Although neither produced nor mentioned at trial, AR 600–8–6 delineates "designated representatives" as "[t]he commissioned officers and [warrant officers] serving in the position of [battalion] S1, adjutant, or assistant adjutant." While there is nothing on the DA Form 4187–E to show that the person signing for the commander filled such a billet, the defense produced no evidence that would indicate any impropriety in an AG first lieutenant signing for the company commander in this situation. The military judge admitted the document, noting that it "barely met the criteria" for admission as an official record. Unlike *United States v. Jaramillio,* where the *authenticating certificate* was signed "for" a captain by a warrant officer whose duty position and relationship to the document was not indicated, Prosecution Exhibit 14 initially bore a presumption of regularity and sufficient guarantees of trustworthiness to be properly admitted as an official record. *See* Military Rule of Evidence 803(8); *United States v. Jaramillio,* 13 M.J. 782 (A.C.M.R 1982); *United States v. Williams,* 12 M.J. 894 (A.C.M.R.1982); STEPHEN A. SALTZBURG ET AL., MILITARY RULES OF EVIDENCE MANUAL 957 (4th ed.1997). The defense did nothing to rebut the document's authenticity and rested.

After an overnight recess, defense counsel produced another DA Form 4187–E, obtained from the government during pretrial discovery, that was identical to Prosecution Exhibit 14 except that the "1LT, AG" notation following the signature was missing.

Despite extensive defense argument that the previously admitted DA Form 4187–E should be withdrawn from evidence, the military judge denied the request. He advised the defense counsel that if he could develop some evidence that the officer who signed the form didn't exist, or that the DA Form 4187–E was a forgery, then he was to bring it to the judge's attention. In the interim, the members would be instructed and begin deliberation on findings.

The revelation of a second personnel action undermined the reliability of Prosecution Exhibit 14, and its presumption of regularity. As noted above, the judge initially found that the exhibit "barely met the criteria" for admission as an official record at the time it was admitted. When confronted with two different records purporting to accomplish the same personnel transaction (leave to AWOL status), and only one with any indicia that the signature was of a person possibly authorized by AR 600–8–6 to be a signatory, the military judge should have reversed his ruling and excluded Prosecution Exhibit 14 from evidence, absent further indicia of its trustworthiness. Without any reliable, admissible evidence that the appellant was absent without leave from his Fort Bragg unit, that conviction cannot stand.

We have carefully examined the record for both legal and factual evidentiary sufficiency and conclude, contrary to appellant's personal assertion, that his guilt of possession of marijuana with intent to distribute was proven beyond any reasonable doubt. His allegation of government misconduct by failing to produce a witness is equally nonmeritorious. *See United States v. Davis,* 29 M.J. 357 (C.M.A.1990).

The findings of guilty of Charge II and its Specification are set aside and that Charge and its Specification are dismissed. The remaining findings of guilty are affirmed. In reassessing the sentence on the basis of the error noted, the entire record, and applying the criteria of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), we are convinced that appellant's twenty-day AWOL had limited, if any, impact on the members' decision to sentence him to a bad-conduct discharge, four years of confinement, and associated penalties. We affirm only so much of the sentence as provides for a bad-conduct discharge, forty-six months of confinement, forfeiture of $437.00 pay per month for forty-six months, and reduction to Private E1.

Senior Judge GORDON and Judge JOHNSTON concur.