**UNITED STATES**

v.

**Samuel J. WHITE Boiler Technician Third Class (E–4), U.S. Navy.**

**NMCM 85 3409.**

U.S. Navy-Marine Corps Court of Military Review.

21 April 1986.

---

LCDR Alvin L. McDonald, JAGC, USN, Appellate Defense Counsel.

Lt. Leonard R. Cleavelin, JAGC, USNR, Appellate Defense Counsel.

Lt. David O. Vollenweider III, JAGC, USNR, Appellate Government Counsel.

Before KERCHEVAL II, RAPP and GRANT, JJ.

**PER CURIAM:**

In accordance with his pleas, appellant was found guilty, by a general court-martial composed of officer and enlisted members, of one specification of possession of marijuana, three specifications of distribution of marijuana, and two specifications of introduction of marijuana onto a military installation with intent to distribute, all in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. He was sentenced to a bad conduct discharge, confinement at hard labor for six months, total forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged, but suspended forfeitures in excess of $413.00 per month for 6 months for the period of confinement and 1 year thereafter. Before this Court, appellant makes the following assignments of error:

## I

THE MILITARY JUDGE ERRED IN FAILING TO DISMISS THE CHARGE AND SPECIFICATIONS FOR THE GOVERNMENT'S FAILURE TO TRY APPELLANT WITHIN 120 DAYS AFTER PREFERRAL OF CHARGES.

## II

SPECIFICATION 6 OF THE CHARGE (WRONGFUL INTRODUCTION OF 7.27 GRAMS OF MARIJUANA WITH INTENT TO DISTRIBUTE) IS MULTIPLICIOUS FOR FINDINGS WITH SPECIFICATION 7 OF THE CHARGE (WRONGFUL DISTRIBUTION OF THE SAME MARIJUANA) AND SHOULD BE DISMISSED. *UNITED STATES V. BROWN,* 19 M.J. 63 (C.M.A.1984).[1]

## I

### RULE FOR COURTS–MARTIAL (R.C.M.) 707—SPEEDY TRIAL

As he did in a pretrial motion to dismiss, which was denied by the military judge, appellant claims that he was not brought to trial within 120 days after notice to him of the preferral of charges, as mandated by

---

1. A third assignment of error—that during providency the judge erroneously inquired into and found the appellant guilty of a specification to which he had pleaded not guilty—was disposed of through a certificate of correction from the court reporter which corrected a typographical error in the record of trial and which indicates that the accused actually did plead guilty to the specification in question.

R.C.M. 707(a),[2] and requests this Court to dismiss the Charge and all specifications pursuant to R.C.M. 707(e).[3] Appellant correctly notes that the charges were preferred and that he was notified of such preferral on 1 October 1984 and that the trial commenced on 8 April 1985, a total of 189 days. Appellant concedes, as he did at trial, accountability for periods of defense delay from 3–28 January 1985 and from 18 March to 8 April 1985 when his counsel made formal, written requests for continuances. Thus, appellant claims defense delay accounted for only 46 days of the time between notice of preferral and trial and that the Government is still responsible for 143 days, well above the 120 day maximum allowed by Rule 707. The Government claims, on the other hand, that in addition to the two periods of delay conceded by the appellant, the defense is accountable for delay from 26 November 1984 to 3 January 1985 as well, during which time trial counsel informed defense counsel that the Government was ready to proceed with the Article 32 pretrial investigation[4], and scheduled various meetings with defense counsel in order to discuss the docketing of the investigative hearing. The Government urges that since, for one reason or another, defense counsel repeatedly canceled and postponed these scheduled docket meetings, albeit somewhat informally until its 3 January written "request for continuance," all delay from the date of the Government's communication that it was ready to proceed on 26 November should be attributed to the defense for purposes of R.C.M. 707. Under the Government's theory, an additional 38 days of delay is attributable to the defense and the time from notice of preferral to trial is reduced to 105 days, well within the dictates of the speedy trial rule. The defense counters that the period of delay from 26 November to 3 January is not chargeable to the de-fense because (1) delay pursuant to normal incidents of military practice are not to be viewed, pursuant to some theory of implied consent and absent extraordinary circumstances or unfair "gamesmanship," as defense delay, and (2) prior to 4 January, the Government failed to take affirmative steps to demonstrate it was ready, willing, and able to proceed on 26 November and failed to affirmatively object to any delay after that date.

R.C.M. 707(c) provides that certain periods of time are to be excluded when determining whether the 120 day period of R.C.M. 707(a) has run. 707(c)(3) provides that "[a]ny period of delay resulting from *a delay in a proceeding* or a continuance in the court-martial granted *at the request or with the consent* of the defense" is such an exclusionary period. (Emphasis added). In the instant case, the Government and defense differ with respect to the characterization of the period of time from 26 November 1984 to 3 January 1985. We find that the evidence, presented through mutual stipulations of chronologies of events and through notes and memorandums offered as exhibits during the argument on the defense motion to dismiss, indicates that the following sequence of events occurred during the disputed time period:

| | |
|---|---|
| 26–27 November 1984 | Trial Counsel (TC) notifies defense counsel (DC) (Appellate Exhibit (Aplt Ex) 6) and civilian counsel (CC) (Aplt Ex 7) that the Government is ready to proceed with the Article 32 pretrial investigation (PTI) and requests the defense to contact her in order to arrange a docket-date. |
| 28 November | DC sends memo to TC (Aplt Ex 8) requesting the presence of a government witness for interview at 1330 on 3 December and informing TC |

---

**2.** R.C.M. 707(a) provides that "[t]he accused shall be brought to trial within 120 days after notice to the accused of preferral of charges under R.C.M. 308 or the imposition of restraint under R.C.M. 304, whichever is earlier."

**3.** R.C.M. 707(e) provides the remedy for a failure to comply with the 120 day rule: "Failure to comply with this rule shall result in a dismissal of the affected charges upon timely motion by the accused."

**4.** Article 32, UCMJ, 10 U.S.C. § 832.

| Date | Event |
|---|---|
| | that CC will be available at 1600 on the same date to meet with TC in order to determine a date for the PTI. |
| 30 November | TC sends memo (Aplt Ex 10) to DC informing him that the requested witness will be provided and that she is free to meet with defense counsel at 1600 on 3 December in order to set a date for the PTI. |
| 3 December | Scheduled meeting canceled by DC. |
| 4 December | DC sends memo (Aplt Ex 11) to TC rescheduling the witness interview for 1400 on 12 December and informing TC that DC will be available at 1600 on 12 December to schedule a PTI. |
| 12 December | Scheduled meeting canceled by DC again as accused releases his CC and retains new CC. TC sends memo to DC (Aplt Ex 12) stating that the Government "is anxious to proceed" with the PTI and requesting that DC contact her to docket the PTI. |
| 13 December | DC sends memo (Aplt Ex 14) to TC informing her that newly retained CC has been notified of TC's desire to proceed with the PTI expeditiously. |
| 19 December | New CC writes letter (Aplt Ex 16) to parties notifying he is counsel of record and requesting to be apprised of the hearing date. |
| 28 December | TC writes letter to CC (Aplt Ex 17) informing him that, pursuant to his 19 December letter and their 27 December phone conversation concerning the fact that DC could not be available prior to 4 January, she has scheduled a hearing with DC and with the investigating officer (IO) for 4 January 1985 in order to docket the PTI. TC notifies IO (Aplt Ex 8) that, because she has encountered difficulty in scheduling a date for the PTI, she has scheduled a session for the PTI on 4 January for the sole purpose of docketing the PTI. |
| 3 January | CC notifies TC, IO, and DC (Aplt Ex 19) that he is unavailable on 4 January and requests a continuance until 28 January 1985. |
| 28 January | Article 32 PTI hearing held. |

Our analysis of R.C.M. 707(c)(3) and the above factual situation leads us to make the following determinations concerning the responsibility for delay with respect to the period of time between 26 November and 3 January.

■ First of all, the Government does not trigger defense delay merely by stating that it is ready to proceed to trial or ready to proceed with the Article 32 investigation. Furthermore, the defense did not impliedly consent to the delay between 26 November and 3 December merely by suggesting to trial counsel that a convenient date to discuss docketing the Article 32 hearing would be 3 December. The defense suggestion did not cause any delay in any "proceeding" as the government notification of 26 November failed to schedule any event which could reasonably be construed to be a "proceeding" as that term is used in R.C.M. 707(c)(3).

■ The next identifiable portion of the 26 November to 3 January contested time period, 3 December to 12 December, presents a somewhat more difficult analytical situation. While the 3 December scheduled meeting between counsel arguably can be said not to constitute a "proceeding," the failure of defense counsel to attend that meeting did ultimately cause a delay in a proceeding (the Article 32 proceeding) since the purpose of the meeting was to set a date for the pretrial proceeding. Additionally, the failure of the meeting to occur was at the express "request" of the defense. That this defense-canceled meeting could not be scheduled for nearly another two months certainly cannot be attributed to any fault of the Government, whose counsel was working diligently [5] to

---

5. Contrary to appellant's assertions, we view trial counsel's efforts to docket the Article 32 proceeding and to "get the ball rolling" in this case as nothing less than diligent and professional. Furthermore, she did an excellent job of establishing a record of the Government's various attempts to schedule meetings with the defense to docket the Article 32 proceeding, and of the defense's concomitant postponements of these scheduled meetings. Her failure to docket a date certain for the Article 32 hearing on 26 November, as soon as she had declared the

try to peg defense counsel down on a date for the investigative hearing, particularly when the remainder of the delay was exclusively the fault of, or at the request of, the defense. Where the Government is diligently forging ahead to bring a case to trial, and the defense postpones meetings which have the effect of frustrating the expeditious processing of a case and ultimately of delaying the proceedings beyond 120 days, it would be the epitome of incongruity to hold that the charges should be dismissed because the accused has been denied *his right* to a speedy trial. The R.C.M. 707 speedy trial rule exists to help protect important constitutional rights, not to give an accused a "gimme" if he and his counsel are adept at playing games and manipulating the system in order to delay proceedings in an attempt to trigger the protections of the rule. Defense requests to repeatedly postpone meetings for their scheduling convenience are not "normal incidents of military practice" which justify charging the Government with the resultant delay. "[W]hile the defense need do nothing to speed a case along to trial, it must do nothing to impede or hamper the case processing. If it does, any delays occasioned by such self-created impediments must be charged to the defense." *United States v. Cherok,* 19 M.J. 559, 571

(NMCMR 1984), *pet. granted,* 20 M.J. 122 (C.M.A.1985). We find that the delay from 3–12 December was requested by the defense for the convenience of the defense. Any genuine defense concern to ensure appellant of his right to a speedy trial, besides the interest of creating the issue of the abrogation of that right, would have manifested itself in cooperation with the trial counsel in her obvious great interest in expeditiously scheduling the Article 32 hearing, rather than in its repeated postponement. Thus, we attribute the 9 days delay between 3 and 12 December to the defense for purposes of the speedy trial rule. R.C.M. 707(c)(3).

▮ The period of time between 13 December and 3 January is more clearly attributable to the defense and therefore excludable in determining whether the 120 days of Rule 707 has run. The 12 December scheduled meeting was canceled by the appellant because of his dismissal of his original civilian counsel and retention of new civilian counsel. Any period of an accused's requested delay so he could obtain the services of civilian counsel is not chargeable to the Government. *United States v. Hines,* 2 M.J. 1148 (N.C.M.R. 1975). *See also United States v. Calla-*

---

Government ready to proceed, was not evidence of dilatoriness, but demonstrates, rather, her attempt to maintain the Naval Service's tradition of the gentlemanly scheduling and docketing of cases and case proceedings, a tradition with which we wholeheartedly agree and which we desire to see continue. In this regard, we specifically reject appellate defense counsel's recommendation that "it's time to place docketing decisions squarely in the hands of military judges" and that "when the Government is ready to go, they should docket the case." This suggestion ignores the nature of the military practice. Frequent change of assignments, sudden deployments, the responsibility of judge advocates to assume military duties beyond the scope of their legal specialty, and the extensive geographical areas encompassing the judicial circuits of many military judges militate against such an inflexible approach to case docketing. While appellate defense counsel's suggestion might, in some cases, render more facile the determination of the applicability of the exclusionary period of R.C.M. 707(c)(3), we believe this benefit is outweighed by the waste of time

and resources certain to occur as repeated Article 39(a), 10 U.S.C. § 839(a) sessions are called for the sole purpose of requesting continuances and redocketing proceedings. We recognize as well, however, that the more traditional approach we here espouse may not be practical when civilian counsel are involved in a case. We temper our discourse, then, with the recent admonition of another panel of this Court in a case involving an R.C.M. 707 issue:

> Case management is almost always made more difficult, as a practical matter, when civilian counsel is involved because counsel is remotely located, usually busy with a myriad of civilian court dates and other meetings and not responsible to the Government for his whereabouts. It may well be that prudence demands that trial counsel utilize more aggressive and formal means, including the invocation of the offices of the military judge and convening authority, to control trial dates and counsel appearances when civilian counsel are involved.

*United States v. Vail,* No. 85 3975, slip opinion at 2 n. 2 (NMCMR 19 March 1986).

*han,* 10 U.S.C.M.A. 156, 27 C.M.R. 230 (1959) (the Government should not be held responsible for delays occasioned by the unavailability of defense counsel); and *United States v. Powell,* 2 M.J. 849 (A.C.M. R.1976) (the accused is chargeable with delay resulting from efforts to determine whether requested counsel was available). We agree with a recent observation of the 11th Circuit Court of Appeals that the speedy trial rule "was not enacted to allow a defendant to string the court along by delaying in retaining counsel and then use the Act [the federal Speedy Trial Act] as a sword to dismiss a proper indictment, rather than as a shield to protect against unnecessary and unfair delays." *United States v. Studnicka,* 777 F.2d 652 (11th Cir.1985). Therefore, we find that the 21 days between 13 December and 3 January should also be attributed to the defense pursuant to R.C.M. 707(c)(3).

 Thus, we subtract an additional 30 days from the 143 days the appellant attributes to the Government after the defense concessions. This would result in the time attributable to the Government for the purposes of Rule 707(a) in the instant case as amounting to a total of 113 days. Thus, appellant was brought to trial within the 120 day limit of R.C.M. 707 and this assignment of error is devoid of merit.

## II

### MULTIPLICITY

 The offense of wrongful introduction of a controlled substance with the intent to distribute is not multiplicious for findings with the offense of wrongful distribution of a controlled substance. *United States v. Hammersley,* No. 84 1264 (NMCMR 11 February 1985) (decided upon return of the record to the Court of Military Review for consideration of the multiplicity issue in light of *United States v. Zupancic,* 18 M.J. 387 (C.M.A.1984); the Court determined the offenses were not multiplicious in light of both *Zupancic* and *United States v. Brown,* 19 M.J. 63 (C.M. A.1984)). *See United States v. Decker,* 19 M.J. 351 (C.M.A.1985). *See also United States v. Beardsley,* 13 M.J. 657 (N.M.C.M. R.1982) and *United States v. Beesler,* 16 M.J. 988 (A.C.M.R.1983).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

KERCHEVAL, Senior Judge, and RAPP and GRANT, JJ., concur.