**UNITED STATES**

v.

**Senior Airman Donald R. GIVENS, Jr.,
FR 524–06–0011, United States
Air Force.**

**ACM 27491.**

U.S. Air Force Court of
Military Review.

Sentence Adjudged 28 Sept. 1988.

Decided 23 June 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni and Lieutenant Colonel Barrett E. Kean, USAFR.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

In the early part of this century, there was a comic strip named "Alphonse and Gaston." The two excessively polite lead characters spent much time stuck in doorways after each had urged the other to go first: "After you, my dear Alphonse" and "After you, my dear Gaston."

This speedy trial case presents an "Alphonse and Gaston" situation. Both Government and defense deferred to the other; each ultimately viewed the other as accountable for the time delays involved; neither seized the initiative and took charge. As a result the appellant was not brought to trial within 120 days after preferral of charges as mandated by R.C.M. 707(a). Guidance from the Court of Mili-

tary Appeals in *United States v. Cook*, 27 M.J. 212, 214 (C.M.A.1988) and *United States v. Carlisle*, 25 M.J. 426, 428 (C.M.A. 1988) makes one thing crystal-clear: *the Government is responsible for unexplained delays*. Bound by this principle, we reverse and order all charges dismissed.

### Factual Setting

Prior to pleading guilty to larceny, wrongful appropriation, and possession of cocaine, violations of Articles 112a and 121, UCMJ, 10 U.S.C. §§ 912a, 921, Senior Airman Givens moved to dismiss all charges and specifications on the basis of denial of a speedy trial. A total of 201 days had elapsed between preferral of charges and commencement of trial. All parties agree that the 13 day period from 9 March (when charges were preferred) to 22 March 1988 (when Captain A was detailed to represent Givens) are the key to resolving this dispute.

This case was tried at Norton Air Force Base, California, where Captain Y was area defense counsel. Y was separating from the service; accordingly, he advised Lieutenant Colonel R, the staff judge advocate, that he would be unable to defend Givens and three others whose trials were upcoming.

At trial, Lieutenant Colonel R revealed the Alphonse and Gaston nature of the case:

> Captain [Y] said words to the effect I can't do the Article 32 investigation because I can't defend Sergeant Givens. We are going to have to get another defense counsel. Now, that in my mind infers that the defense community is not ready to proceed because they don't have any counsel assigned. Did he say words directly I am requesting a delay in the Givens case, I don't recall whether he said those words or not probably not [sic]. He surely was conveying the message to me that we were not prepared to proceed because Givens is unrepresented, I can't represent him.

In addition, Lieutenant Colonel R informed his general court-martial convening authority's staff judge advocate that Captain Y had orally requested delays in the hearings and that R considered "all time to be approved defense requested delays for chronology purposes."

Captain Y's recollections differ from those of Lieutenant Colonel R. Y indicated in stipulated testimony that he was "certain he never requested a delay" but did make arrangements to obtain counsel for the appellant. Captain A, the appellant's trial defense counsel, learned of her being detailed on 22 March 1988.

The Article 32 hearing was scheduled for early April. Various difficulties were encountered; their nature is not significant to disposition of the speedy trial issue. In any event, the Article 32 hearing was finally completed on 17 May.

As stated earlier, the appellant moved at trial to dismiss all charges and specifications due to denial of a speedy trial. The military judge ultimately denied the motion. She tentatively found the Government to be responsible for 124 days, but cautioned that her calculations were based on "raw numbers." She then adjusted the data to more accurately represent—in her view—a full appreciation of the situation. The military judge reasoned that both sides must be accountable and that delays in detailing a new defense counsel must be factored in. As the military judge put it: "The defense establishment, knowing a person is anticipating court-martial charges and then knowing charges had been preferred, must be responsible for at least part of an initial delay that could have only occurred with their consent." Noting that charges had been preferred on 9 March and Captain A was finally detailed on 22 March, the military judge opined that a defense counsel should have been detailed on 9 March. In a Solomon-like gesture, the military judge split the disputed time in two, finding half of this 14 day delay attributable to the defense.[1]

---

1. It appears the military judge erred slightly in her computation. The duration is 13 days as opposed to 14, given the counting method set forth in R.C.M. 707(b)(1). *See United States v. Butterbaugh*, 22 M.J. 759, 762 (N.M.C.M.R.1986).

As a result of her final calculations, the military judge held the prosecution accountable for a total of 117 days. Since this was under the 120 day rule established by R.C.M. 707, the defense motion was denied and trial proceeded.

Before us, the appellant renews his speedy trial contentions. We have examined the various subsections of R.C.M. 707 and find that none of them can salvage the Government's case. Accordingly, after able appellate argument by both parties, we agree with the position of the appellant and dismiss.

### Analysis Under R.C.M. 707(c)(3)

R.C.M. 707(c)(3) is crucial to resolving this case. That provision excludes delays resulting from a defense *request* or defense *consent* to delay. In the present case, we find that the evidence does not rationally support such an exclusion.

In *United States v. Carlisle*, 25 M.J. at 428, the Court of Military Appeals made a clear-cut, no-nonsense rule:

> [E]ach day that an accused is available for trial is chargeable to the Government, unless a delay has been approved by either the convening authority or the military judge, in writing or on the record.

The rule was re-emphasized in *United States v. Cook*, 27 M.J. at 214.

Here, no such delay—in writing or on the record—was requested of or consented to by the appellant or approved by the convening authority or military judge.

■ We read the Court of Military Appeals cases which have interpreted R.C.M. 707(c)(3) to spell out the applicable standard in unmistakable terms:

—The "clock" runs against the Government absent something to the contrary in writing or on the record. *Ibid.*

—The burden is on the Government to bring an unconfined accused to trial within 120 days. *United States v. Cook*, 27 M.J. at 215 and *United States v. Facey*, 26 M.J. 421, 425 (C.M.A.1988).

—When an accused moves to dismiss for lack of speedy trial, the burden of persuasion is on the Government to make a proper record. *Ibid.* and *United States v. Burris*, 21 M.J. 140, 145 (C.M.A.1985).

—The Government has the power and the burden to prevent speedy-trial problems. *United States v. Carlisle*, 25 M.J. at 428 and *United States v. Cherok*, 22 M.J. 438, 440 (C.M.A.1986).

—A narrow exception may exist: Should the defense engage in misconduct, the accused may well be estopped from claiming lack of speedy trial. *United States v. Burris*, 21 M.J. at 144.

■ Our fellow service courts have construed this exclusion as well. We read these opinions to say that informal exchanges between the prosecution and defense, such as those which occurred here with Lieutenant Colonel R and Captain Y, cannot be considered delays at the request or with the consent of the defense as envisioned by R.C.M. 707(c)(3). *See United States v. Brodin*, 25 M.J. 580, 581 (A.C.M.R 1987) and cases cited; *United States v. McCallister*, 24 M.J. 881, 889–890 (A.C.M.R.1987); *United States v. Butterbaugh*, 22 M.J. 759 (N.M.C.M.R.1986); *United States v. White*, 22 M.J. 631, 634 (N.M.C.M.R.1986). *See also United States v. Burris*, 21 M.J. at 145 and Wittmayer, *Rule for Courts–Martial 707: The 1984 Manual for Courts–Martial Speedy Trial Rule*, 116 Military Law Review 221, 244 (Spring 1987).

### R.C.M. 707(c)(5)

In scheduling oral argument on this case, we informed opposing counsel that we desired argument on whether a delay to obtain the Article 32 testimony of two Los Angeles police officers on the cocaine charge was an acceptable delay under R.C.M. 707(c)(5)(A). The record fails to convince us that the Government attempted to invoke the relevant mechanism of the R.C.M. to gain a delay. Accordingly, we cannot grant the Government relief upon this basis. *See United States v. Cook*, 27 M.J. at 214 n. 4; *United States v. Kuelker*, 20 M.J. 715 (N.M.C.M.R.1985); Wittmayer, *supra*, at 246.

### R.C.M. 707(c)(6)

The Government suggested in oral argument that a period of time could be excluded because of the absence or unavailability of the accused. To the Government, Senior Airman Givens was "unavailable" in early March 1988 since he was not represented by counsel. R.C.M. 707(c)(6) appears limited to unauthorized absences, unavailability due to illness, and the like. *See, e.g., United States v. Turk,* 24 M.J. 277 (C.M.A.1987); *United States v. Lilly,* 22 M.J. 620 (N.M.C.M.R.1986); *Duron v. Fleischman,* 156 Ariz. 189, 751 P.2d 39 (App.1988) (parallel civilian rule; witness' whereabouts unknown). *See also* Wittmayer, *supra,* at 246–248 and Annot., 46 A.L.R.Fed. 358, 369–370 (1980). Accordingly, we refuse to construe this section as providing a favorable exception to the Government on the present facts.

### R.C.M. 707(c)(9)

Finally, it has been suggested that R.C.M. 707(c)(9) should be applied as a sort of "residual good cause" exception to the speedy trial rule. We believe the Army and Navy–Marine Corps Courts of Military Review have appropriately adopted a restrictive reading of R.C.M. 707(c)(9) in *United States v. Durr,* 21 M.J. 576 (A.C.M.R.1985) and *United States v. Lilly,* 22 M.J. at 620. The present facts do not reasonably permit us to find this exception. As we ourselves suggested in *United States v. Miniclier,* 23 M.J. 843, 847 (A.F.C.M.R. 1987), a "lesser standard could allow the exception to devour the rule." *See* Wittmayer, *supra,* at 249.[2]

### The Future of Speedy Trial

Judicial amplification of the speedy trial rules within R.C.M. 707 places a new, perhaps onerous burden on staff judge advocates. There are many who may wish to resist what is required by the precedents, feeling that dismissal of charges destroys the very system they are sworn to uphold and has little to do with a fair, accurate outcome. On the other hand, many could argue that an efficient Government must bring an accused to trial with dispatch and —failing that—a prophylactic rule of dismissal is appropriate to deter future delays. We believe the Court of Military Appeals has spoken and we must honor its guidance.

This was a case where the time simply got away from the parties. While we do not see our role as that of trainer to younger judge advocates, this case can be a useful vehicle to remind all concerned of the "basics" of an efficient military practice. Accordingly, we offer several observations which may be of service—particularly to trial-level personnel and novice staff judge advocates.

1. "Alphonse and Gaston" tactics will not do; it is the duty of the Government to press forward. As the Court of Military Appeals noted in *United States v. Carlisle,* 25 M.J. at 428, the Government possesses the power and carries the burden to prevent speedy trial problems. Furthermore, staff judge advocates should not bank on gaining more time due to scheduling difficulties. As the Navy–Marine Corps Court commented in *United States v. Johns,* 21 M.J. 819, 821 (N.M.C.M.R.1985), the 120–day timeframe is designed to permit one to deal with the realities of professional and military life. We note that the Court of Military Appeals quoted with approval in *United States v. Burris,* 21 M.J. at 144 its earlier pre-Rules case of *United States v.*

---

**2.** Might *United States v. Higgins,* 27 M.J. 150 (C.M.A.1988) permit a delay such as that in the present case? In *Higgins,* the officer-appellant tendered his resignation and its processing occurred outside the local command. The Court of Military Appeals held that the period when the matter was outside the local command was excludable from Government accountability as a delay for good cause under what is now R.C.M. 707(c)(9). We decline to so find in the present case. *Higgins* was premised on a situation where there is "absent any allegation or showing of government foot-dragging." *United States v. Higgins,* 27 M.J. at 154. Here, the Government did not have its evidence from the laboratory on the cocaine offense until eight days after it had preferred charges. Moreover, the Article 32 Investigating Officer found the evidence incomplete upon first analysis. Finally, the Government has been unable to show any reasonable explanation as to why the Article 32 investigation was scheduled in early April but not completed until 17 May.

*Wolzok*, 1 M.J. 125 (C.M.A.1975). The *Wolzok* case stands for the proposition that docketing delays generally are attributable to the Government. We believe that other pre-Rules cases such as *United States v. Marshall*, 22 U.S.C.M.A. 433, 47 C.M.R. 409 (1973) enjoy continued vitality. *Marshall* considered whether such reasons as a heavy workload or absence of a full compliment of trial counsel were sufficient to win additional time for the Government. Refusing to so rule, the Court commented that:

> Defects in the drafting of charges, failure to secure statements of witnesses before their reassignment to other organizations at the same base, too few officers assigned to the preparation of the pretrial advice, illness or injury of the staff judge advocate and his assistant, and absence of the convening authority are all conditions or circumstances for which the Government is responsible and for which allowance was made in the establishment of the 3–month standard.

2. Have a "regular crew chief" and insure weekly (if not daily) meetings. The record of trial in this case shows that no one individual ultimately took responsibility; instead, there was a vague accountability shared by the staff judge advocate, the Government representative at the Article 32, the Chief of Military Justice, and the Investigating Officer. Judge Cox spoke directly to this matter in *United States v. Carlisle*, 25 M.J. at 428 when he stated that it is mandatory to have a *"must go* or action due date" for each court-martial case.

3. Get delays in writing. We have no doubt that Lieutenant Colonel R was being accommodating to Captain Y, who was processing out of the Air Force. What occurred was a good-faith semantic "disconnect."

Unfortunately for the Government, the matter must be resolved in favor of the accused per *Cook* and *Carlisle*. It appears, then, that the days of "gentlemanly scheduling" applauded in *United States v. White*, 22 M.J. 634 n. 5, are over. The Court of Military Appeals, writing in *United States v. Burris*, 21 M.J. at 144, has indicated that "docketing delays are generally attributable to the Government." *See also United States v. McCallister*, 24 M.J. at 889.[3]

4. Don't prefer charges until you're ready. In this case, with no pretrial confinement, the Government preferred charges eight days before it had laboratory reports in hand concerning the accused's drug use. In addition, the Government knew that the local area defense counsel, Captain Y, was getting out of the Air Force. We can discern no practical reason to charge this accused at that time.

5. Anticipate summer rotations and transfers. Talk to the defense and insure that nothing slips.

### Conclusion

Ultimately, the holdings in *Carlisle* and *Cook* make the burden a difficult one for the Government. Yet perhaps the wave of the future can be seen in the final argument of Captain A, the trial defense counsel, before the military judge: "The 120 days are there for a purpose. They aren't there for people to mess around, they are

---

**3.** We readily concede the fact that the staff judge advocate does not "superintend" the defense community under modern Air Force practice. *See* AFR 111–1, *Military Justice Guide*, paragraph 8–3a (30 September 1988). How, then, should we view the unlikely event that the staff judge advocate might not obtain defense cooperation? In the first place, we have serious doubts that the defense community would not, as officers of the court, be fully cooperative in providing counsel for accuseds needing such help or memorialize a delay request in writing. Moreover, the Court of Military Appeals has already suggested the defense would not be able to engage in sharp practices and then claim lack

of speedy trial. *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985). Finally, in the event counsel was not forthcoming, we note the Army Court of Military Review's provocative expansion upon *United States v. Carlisle*, 25 M.J. 426 (C.M.A.1988). *Carlisle* holds that each day an accused is available for trial will be charged to the Government unless a delay is approved by either convening authority or military judge. In *United States v. Longhofer*, A.C.M.R. 30 June 1988 (unpub.), cited in Army Lawyer, p. 46 (September 1988), the Army Court found that the Article 32 investigator could grant defense delays because he was acting as the convening authority's representative.

there to get things accomplished" and "The Government is responsible for moving things along."

The findings of guilty and the sentence are set aside. The charges and specifications are dismissed.

BLOMMERS, Judge (concurring):

I concur. I adhere to my reservations concerning the application of R.C.M. 707 expressed in my separate opinion in *United States v. Raichle*, 28 M.J. 876 (A.F.C.M. R.1989).

LEWIS, Senior Judge (dissenting):

Senior Judge Kastl has correctly analyzed this situation insofar as the case law construing R.C.M. 707(c)(3) (delays granted at the request or with the consent of the defense) is concerned. I concur with a great deal that has been written in the lead opinion, but not with the bottom line. I conclude that the military judge's ruling that the Government did not exceed the 120 day pretrial limit is supported by the record and should be upheld. Senior Airman Givens was not denied a speedy trial within the meaning of R.C.M. 707.

The military judge apportioned the critical period from 9 March until 22 March 1988 more or less evenly between the prosecution and defense. At first glance this approach might appear to violate the following guidance in *United States v. Cook*, 27 M.J. 212, 215 (C.M.A.1988): "This type of informal, after-the-fact allocation to the defense of a 'reasonable' period of delay does not meet the demands of R.C.M. 707." Unfortunately, the *Cook* opinion had not yet been released when the military judge rendered her findings. Thus, this guidance was not available to her. Nevertheless, the allocation of a portion, if not all, of the critical period under consideration to the defense makes sense in this case. It amounts to something more than an "informal, after-the-fact allocation." Under the peculiar facts before us, the military judge's allocation is consistent with existing case law and ought not be overturned on appeal.

The Government, most significantly the Article 32 investigating officer, did not act with great dispatch in moving the case forward. However, insofar as the period from 9 to 22 March 1988 is concerned, there was no incentive to do so. Captain Y, the area defense counsel, had notified the staff judge advocate that his application for early separation from the Air Force had been approved and that he would not be available to represent Senior Airman Givens and certain others. The thrust of this communication from Captain Y, as I understand it, was that the appellant was not represented by counsel. In this circumstance, there was no way that he could be compelled to participate in a pretrial investigative procedure. In so concluding, I accept as a basic tenet of our practice that we do not proceed with pretrial investigations against those who are not represented by counsel. Article 32(b), UCMJ; Article 38(b), UCMJ, 10 U.S.C. § 838(b); R.C.M. 405(d)(2); *United States v. Nichols*, 8 U.S. C.M.A. 119, 23 C.M.R. 343 (1957). Our Departmental guidance, while not specifically stating that an accused is to be represented by counsel during the pretrial investigative process, clearly presumes as much. *See* Air Force Regulation (AFR) 111–1, *Military Justice Guide*, para. 5–1f (30 September 1988).

In this case, the investigating officer might have scheduled an Article 32 hearing prior to 22 March 1988. If he had done so, we can safely assume that matters would not have proceeded past the point of a counsel rights advisement, whether Senior Airman Givens appeared alone or with Captain Y, who had already advised the staff judge advocate that he could not represent the appellant on the pending charges. The advantage of such a truncated proceeding would be that the resulting defense requested delay would have been adequately documented. However, this is not what occurred. We are now required to determine whether the military judge erred in finding that the defense was nonetheless accountable for a portion of the period immediately following preferral of charges. The majority says she did; I say she did not.

Who had the responsibility for insuring that counsel was detailed to represent the appellant when Captain Y informed the staff judge advocate that he would not be available to provide representation? In considering this matter I assume that most persons would readily agree that it would have been unwise for the staff judge advocate to have insisted that Captain Y provide pretrial representation for the appellant notwithstanding his pending separation. From my reading of the record, I infer that Captain Y was in the process of completing those representational duties to which he was already committed as well as contemplating the crossing of the psychological bridge which separates productive Air Force professionals from aspiring civilians. He was not the right person to represent the appellant in this circumstance.

In the Air Force, the responsibility for detailing defense counsel reposes within Defense Services, whether at Circuit or Office of The Judge Advocate General level. AFR 111–1, *supra*, para. 8–3a(1). The same basic provision appeared in the regulation in effect during the critical time period in question. AFR 111–1, para. 3–6a(1) (1 August 1984). According to Captain Y's stipulated testimony, which was considered at trial, this is consistent with what he advised the staff judge advocate; i.e., "that the circuit would be assigning new defense counsel" to the appellant and certain others whose cases were pending at that base during the same time frame. The important point that we should bear in mind is that Captain Y was presenting the staff judge advocate with a problem that was beyond his authority, and that of the convening authority, to resolve.

Appellate government counsel, during oral argument, urged the applicability of *United States v. Higgins*, 27 M.J. 150 (C.M. A.1988). This point is well taken. The Government should not be chargeable with a unavoidable period of delay when the cause for the delay, the lack of a detailed defense counsel, is outside the control of the local command. *Id.* at 151.

Senior Judge Kastl declines to apply *Higgins* owing to what is perceived as "government foot-dragging." 27 M.J. at 154. The record does reflect some question as to whether the investigating officer would have been prepared to proceed prior to 16 March 1988 in any event because an important laboratory report was not in hand until that date. Notwithstanding this fact, the most energetic and diligent Article 32 investigating officer in the Air Force could not have made any meaningful progress in accomplishing an Article 32 investigation in this case prior to 22 March 1988 when detailed counsel was finally identified. I do not believe the Government should be penalized because its primary representative appears to have moved too slowly and with too little attention to developing an intelligent plan of action. In the particular situation before us, even the most aggressive efforts to move the case forward could only have taken the pretrial process up to the point of hearing, but not beyond.

In *Higgins*, the Court of Military Appeals applied R.C.M. 707(c)(8), since renumbered as 707(c)(9), which excludes "any other period of delay for good cause, including unusual operational requirements and military exigencies." Admittedly, I would be somewhat uncomfortable in relying on this particular exclusion in the situation before us. However, it could be argued with some merit that the local area defense counsel's informing the staff judge advocate that he will be leaving the Air Force early and will not be able to undertake representation of a number of individuals at the installation is every bit as "unusual" as an officer's submitting a request for resignation in lieu of trial, the situation addressed in *Higgins*. The key point of *Higgins*, as in this case, is that the Government, operating through its local command representatives, had no effective means of controlling the situation.

The basic issue that needs to be addressed, apart from our consideration of *Higgins*, is whether Captain Y's status created a situation which merited a Government exclusion of any sort from pretrial accountability. In *United States v. Henderson*, 1 M.J. 421 (C.M.A.1976), the Court considered the 90 day pretrial incar-

ceration standard enunciated in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). The Court noted that "the standard contemplates and provides for the normal delays which might be expected during this [pretrial] process occasioned, among other causes, by personnel shortages, docketing conditions, and leave of counsel." 1 M.J. at 423. *See also United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973), cited in the lead opinion. As Senior Judge Kastl, I have no reason to believe that the R.C.M. 707 time standard should be viewed differently. Given that, I do not regard the early separation of an area defense counsel as a "normal" occurrence when the result is to leave those facing military justice actions at the installation without the effective services of counsel for a period of time.

The Government should be held accountable for those events which it can reasonably control and which it is expected to control. The Government, operating through the staff judge advocate, can foresee the departure of an area defense counsel and initiate an appropriate personnel action to provide a replacement. However, the Government's situation differs when the incumbent area defense counsel announces that he is unable (or unwilling) to fulfill certain responsibilities owing to his pending departure. Captain Y's declaration, in my view, clearly placed the ball in the Defense Services' court, and this is exactly what he orally conveyed to the staff judge advocate. I find no suggestion in the record that charges were deliberately preferred against the appellant at a time when the Government and its representatives knew that he would not have the effective services of counsel. I have no difficulty answering my own rhetorical question in these circumstances. Yes, the Government is entitled to an exclusion of at least a portion of the period between 9 and 22 March 1988.

I base the exclusion on R.C.M. 707(c)(6), as a "period of delay resulting from the . . . unavailability of the accused." I agree with Senior Judge Kastl's observation that judicial interpretations of this rule have addressed situations in which an accused is physically unavailable. I do not agree that this is a reasonable limitation on this particular exclusion in all cases. An accused without the services of a counsel is as unavailable to his command for purposes of an Article 32 investigation as an absent sailor who has been returned to Naval control but not to his ship. *See United States v. Turk*, 24 M.J. 277, 278 (C.M.A.1987). It would have been futile for the Government to have attempted to conduct an Article 32 investigation on the charges preferred against Senior Airman Givens prior to 22 March 1988, when counsel was identified. Until that date, he was legally unavailable. *See United States v. Nichols, supra*, 23 C.M.R. at 348.

The military judge's ruling on the speedy trial motion is supported by the record. She would not have erred if she had allocated the entire period from 9 March to 22 March 1988 to the defense. As I view this record, the speedy trial clock did not begin ticking against the Government until 22 March 1988. I would affirm the findings of guilty and sentence.