**UNITED STATES, Appellant,**

v.

**Donald R. GIVENS, Jr., Senior Airman, U.S. Air Force, Appellee.**

No. 62,933.
ACM 27491.

U.S. Court of Military Appeals.

Argued Dec. 14, 1989.

Decided Aug. 16, 1990.

For the United States: *Captain Morris D. Davis* (argued); *Colonel Joe R. Lamport* and *Major Terry M. Petrie* (on brief).

For the Accused: *Captain Paul M. Dankovich* (argued); *Colonel Richard F. O'Hair* (on brief).

*Opinion of the Court*

COX, Judge:

At Norton Air Force Base, California, the accused was tried by a military judge sitting alone as a general court-martial. In accordance with his pleas, the accused was convicted of possessing cocaine, larceny, and wrongful appropriation, in violation of Articles 112a and 121, Uniform Code of Military Justice, 10 USC §§ 912a and 921, respectively. He was sentenced to a bad-conduct discharge, confinement for 15 months, total forfeitures, and reduction to E-1. The convening authority approved the

sentence (which was within the limitations of the pretrial agreement) as adjudged. The Court of Military Review dismissed the charges on the ground that the accused was denied a speedy trial. 28 MJ 888 (1989).

The Judge Advocate General of the Air Force has certified these issues for review (*see* Art. 67(b)(2), UCMJ, 10 USC § 867(b)(2)):

## I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED, AS A MATTER OF LAW, BY APPLYING THE WRONG STANDARD OF REVIEW IN EVALUATING THE MILITARY JUDGE'S RULING ON A SPEEDY TRIAL ISSUE UNDER RCM 707 WHEN THEY REINTERPRETED THE FACTS AND SUBSTITUTED THEIR JUDGMENT FOR THAT OF THE MILITARY JUDGE RATHER THAN DETERMINING WHETHER HER RULING WAS UNSUPPORTED BY THE EVIDENCE OR WAS CLEARLY ERRONEOUS.

## II

WHETHER THAT PORTION OF RCM 707(C)(3) WHICH EXCLUDES DELAYS GRANTED "WITH THE CONSENT OF THE DEFENSE" HAS BEEN JUDICIALLY LEGISLATED OUT OF EXISTENCE.

## III

WHETHER THE MILITARY JUDGE'S RULING EXCLUDING FROM THE SPEEDY TRIAL COMPUTATION PART OF THE INITIAL THIRTEEN DAY PERIOD FOLLOWING PREFERRAL OF CHARGES DURING WHICH THE DEFENSE SERVICES DIVISION ARRANGED FOR LEGAL COUNSEL FOR THE ACCUSED, A PROCESS OUTSIDE THE CONTROL OF THE LOCAL COMMAND, WAS UNSUPPORTED BY THE EVIDENCE OR WAS CLEARLY ERRONEOUS.

These issues are predicated on the accused's pretrial motion to dismiss all charges and specifications due to a lack of speedy trial.[1] The only facts significant to this appeal pertain to speedy trial. Of those facts, only the period March 9–22, 1988, is in dispute. If that time is charged to the prosecution, the Government is responsible for 124–days' delay and the defense for 77 days. Where, as here, the accused has not suffered "imposition of restraint," charges are to be dismissed "upon timely ·motion by the accused" if more than 120 days are attributable to the Government. RCM 707(a) and (e), Manual for Courts–Martial, United States, 1984.

On December 23, 1987, the accused was arrested by civilian authorities for off-base possession of cocaine. In late 1987 and early 1988, he was under investigation by military authorities for larceny. In January and February 1988, the accused met with Captain Douglas Yeoman, the area defense counsel for Norton Air Force Base; an attorney-client relationship was formed. The original charges and specifications (larceny and possession of cocaine) were preferred and served on the accused on March 9, 1988, thus triggering the 120–day rule. RCM 707(a)(1). The additional charge

---

1. The pretrial agreement—i.e., the paperwork—was made conditional (*see* RCM 910(a)(2)) in only one respect: the accused's ability to appeal the adverse ruling of the military judge on a motion to suppress drug evidence. During the providence inquiry, however, it became clear that both the prosecution and the defense intended that the pleas to *all* specifications be conditioned on the accused's ability to raise the speedy-trial issue on appeal. As this condition was not part of the written agreement, a recess was declared to permit the convening authority's joinder in modifying the document. Fifteen minutes later, the hearing resumed. At this time, counsel agreed that it was "not necessary to have a conditional plea to preserve the speedy trial motion to preserve that issue for appeal." The military judge accepted this representation, and pleas were entered. In this situation, the Government is estopped from claiming (and does not claim) that the pleas of guilty waived appellate review of the speedy-trial issue.

(wrongful appropriation) was preferred and served on June 24, 1988.

On or about the initial date of preferral, Captain Yeoman met with the staff judge advocate for Norton AFB. Neither Yeoman, whose testimony was presented in the form of a stipulation of expected testimony, nor the staff judge advocate, who testified at the court-martial, could recall the exact date of this conversation. Presumably, however, it occurred shortly after preferral and notification of charges. At this meeting, Yeoman informed the staff judge advocate that he would not be able to handle the Article 32, UCMJ, 10 USC § 832, investigation of the accused and several other new clients. This was due to the fact that Yeoman's request for early separation from the service had just been approved, and he needed to concentrate on finishing up other cases already in progress. Yeoman explained that the chief circuit defense counsel would be assigning new counsel to the new cases. On March 22, 1988, Captain Mary Aakhus, who was assigned to March AFB, was notified that she would be the accused's trial defense counsel.

According to the staff judge advocate, Yeoman's words were "that the 32s would not be able to proceed, because he wasn't going to be able to represent the accused that were charged." According to the stipulation of Yeoman's testimony, he merely informed the staff judge advocate "that he would be leaving the Air Force early and would be unable to represent various clients [including the accused] at courts-martial." Whatever the exact content of the conversation, the staff judge advocate viewed the interim between the conversation and the appointment of Captain Aakhus as delay attributable to the defense. The staff judge advocate so informed his superiors in a report dated March 28, 1988.[2]

Contrary to the implication of the report, however, the staff judge advocate did not assert at trial that Captain Yeoman ever, in so many words, requested a delay in the case. Further, Yeoman was not required by the staff judge advocate to document this presumed request after-the-fact, as would have been normal in that command in such circumstances.

The Article 32 investigating officer—a judge advocate—was called as a government witness on the speedy-trial motion. He was appointed investigating officer on March 9, the date of initial preferral and notification of charges. The command letter appointing this officer instructed:

> Your investigation will be completed within five calendar days. Any delay will be completely explained in your report of investigation.

Under the heading, *"Chronology,"* the investigating officer's report, dated May 17, 1988, contains these sequential entries:

> 9 Mar 88: Charges Preferred, I.O. Appointed.
>
> 15 Apr 88: First Hearing. ADC Delay until this time. See Ex 5.

The referenced "Ex 5" is merely a copy of the staff judge advocate's report of March 28, 1988. *See* n. 2, *supra.*

The investigating officer's testimony on direct examination on the motion may have some significance as to whether a delay was, in fact, requested. Under questioning by *trial counsel*, the investigating officer

---

2. The substance of this report was as follows:

1. The following general courts-martial have had their Article 32 hearings delayed following preferral of charges by the defense community. Captain Yeoman (ADC, Norton AFB) has been scheduled to separate on 15 Apr 88. Since these cases were anticipated to come to trial after that date, Captain Yeoman orally requested delays in the hearings while he conferred with the CCDC [Chief Circuit Defense Counsel], Fifth Circuit, respecting counsel assignments. The CCDC was TDY and unavailable to make the decision until about a week later. Following defense counsel assignments, the Article 32 hearings were then delayed for preparation and scheduling conflicts until the date reflected in each Article 32 report. As such, I consider all time to be approved defense-requested delays for chronology purposes.

2. The cases affected are:

    \*    \*    \*    \*    \*    \*

    c. *U.S. v. Givens*—Preferred 9 Mar 88

explained his commencement of the investigation as follows:

Q. When were you appointed Investigating Officer? Do you remember:

A. I don't recall exactly, I believe it was early March.

Q. Do you remember who the defense counsel was for Senior Airman Givens?

A. Yes, it was Captain Mary Aakhus.

Q. When did you first contact Captain Aakhus in terms of scheduling the Article 32?

A. I don't recall exactly. But I believe it was toward the end of March of this year.

Q. Is it normal in this office to wait roughly two weeks to try and schedule a 32?

A. No, I think that that was not normal. *We had a heavy work load at that time and there was other pressing matters that I was working on and then realized that the 32 had been sitting for a while and it was time to contact the defense and get it started.*

(Emphasis added.)

No other explanation was provided by the investigating officer for the delay during the period March 9–22, 1988. Specifically, at no point in his testimony did the investigating officer indicate that a defense-requested delay or lack of defense counsel had any bearing whatever on the timing of his decision when to press forward.[3] The balance of the officer's testimony pertained to events occurring after appointment of Captain Aakhus as defense counsel.

After receiving the evidence on the motion, the military judge allocated the delay between the prosecution and the defense, commencing with a defense delay on June 8, 1988. After all periods from June 8 were characterized, the judge returned to the March 1988 time frame and concluded:

6. The government (I am computing raw numbers based on documented delays described above) is therefore accountable for 124 days and the defense for 77 days of the total 201 days to bring Senior Airman Givens to trial.

7. But on full consideration of the initial stages of this case, the question must be asked, if the defense itself was diligent from the circuit defense's first awareness of the potential problems with Captain Yeoman's clients. Surely, as well, the government must be held accountable for diligence in pursuing the case through an Article 32 hearing to subsequent, if any, actions. The circumstances of this case are in a large part the result of the delay in detail of the defense counsel, and the multiple changes in trial counsel, assistant trial counsel, and the military judge. Even the defense must have been lulled into some complacency about an accountability of delays, as several defense delays were requested and the motion itself was literally at the 11th hour before trial.

8. The government saw the delay in detail of the new defense counsel in this case as a reasonable delay and attributable to the defense. *The defense establishment,* knowing a person is anticipating Court-martial charges and then knowing charges had been preferred, *must be responsible for at least part of an initial delay that could only have occurred with their consent.* Captain Aakhus' office note indicates awareness of the accused's case on 22 March 1988. Thereafter the case did begin to move. Half of that 14 day delay [4] from prefer-

---

3. At some point, it must be noted that the claim that the accused was without counsel is utterly bogus. It is one thing to demand that a lawyer drop all business and follow the client around the world once an attorney-client relationship has been formed. *See United States v. King,* 30 MJ 59 (CMA 1990). It is quite another matter to *expect an attorney, who is in the area anyway,* merely to stand by for a few days and be available to render such temporary assistance as may be reasonable and necessary, pending assignment of another attorney. *Cf. United States v. Palenius,* 2 MJ 86, 93 (CMA 1977); Rule 1.16(b), ABA Model Rules of Professional Conduct (1983).

4. Because the date of preferral does not count for the purpose of computing time under RCM 707(a), the actual period in issue was 13 days. *See* RCM 707(b)(1).

ral of the charges on 9 March 1988 when the defense counsel should have been detailed to 22 March 1988 should be attributed to the defense. Therefore the prosecution must be held accountable for a total of 117 days and the defense were [*sic*] 84.

The defense motion is therefore denied. (Emphasis added.)

Upon a defense motion for reconsideration, the military judge clarified her findings:

The court has carefully considered the defense request for my reconsideration of their speedy trial motion. I did review the cited cases and can appreciate the defense counsel's concerns about their application to this case. I would distinguish, however, this case from the Carlisle [25 MJ 426 (CMA 1988)] case and other cases with holdings that delays where counsel are silent must be attributable to the government because the government has the burden to move the case.

At the first stage of this case, there was no defense counsel appointed. Therefore, there was not mere silence by the defense counsel interpreted by the government as acquiescence actually essence [*sic*] in a delay. *The government indeed did have a reason it could not go ahead with the Article 32 hearing. There was no defense counsel detailed for the accused.*

I have carefully reconsidered in my finding that government and defense share accountability for the time between preferral and notice to the accused. That is 9 March 1988, and defense counsel's first notation of the case is 22 March 1988.

My ruling will stand.

(Emphasis added.)

■ On appeal to the Court of Military Review, the accused again raised the issue of speedy trial. A panel of that court, in a divided opinion, set aside the findings of guilty and the sentence, and dismissed the charges and specifications. The court below impliedly rejected the military judge's theory that the defense establishment consented to delay by its dilatory appointment of counsel. The court below construed our opinion in *United States v. Carlisle, supra,* as precluding a conclusion that defense counsel had requested or consented to delay during the time frame March 9–22, 1988. In addition, the court held that no other exception to the speedy-trial rule applied. 28 MJ at 890–91.[5]

The accused does not contend that either his constitutional right to a speedy trial, as provided by the Sixth Amendment, or his statutory right to a speedy trial, as provided by Article 10, UCMJ, 10 USC § 810, has been violated. He also does not contend that he has been prejudiced by the delay. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Grom,* 21 MJ 53 (CMA 1985), *cert. denied,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 718 (1986). Rather, he predicates his claim for relief on a "technicality," namely that the Government did not comply with the President's procedural rule (RCM 707) regarding the time within which an accused must be brought to trial.

RCM 707(e) unequivocally requires "*dismissal* ... of charges" if the Government fails "to comply with this rule." (Emphasis added.) Therefore, our task, as it was for the Court of Military Review and the military judge, is to construe the rule. This Court has attempted to be faithful to that task, yielding appropriately to findings of fact, supported by evidence of record, made by military judges and Courts of Military Review. *See United States v. Longhofer,* 29 MJ 22 (CMA 1989); *United States v. Robinson,* 28 MJ 481 (CMA 1989); *United States v. Ramsey,* 28 MJ 370 (CMA 1989); *United States v. Maresca,* 28 MJ 328 (CMA 1989); *United States v. Cook,* 27

---

5. As was the Court of Military Review, we are unpersuaded by the Government's theory that, by virtue of defense delay in appointing counsel, the accused was legally "unavailable." *See* RCM 707(c)(6)(excluding "[a]ny period of delay resulting from the absence or unavailability of the accused"). Similarly, there is no basis for contending that RCM 707(c)(9)(excluding "[a]ny other period of delay for good cause, including unusual operational requirements and military exigencies") applied.

MJ 212 (CMA 1988); *United States v. Higgins,* 27 MJ 150 (CMA 1988); *United States v. McCallister,* 27 MJ 138 (CMA 1988); *United States v. Carlisle,* 25 MJ 426 (CMA 1988); *United States v. Burris,* 21 MJ 140 (CMA 1985).

### Issue I:

*Did the Court of Military Review reinterpret the "facts" and substitute their judgment for the judge's?*

■ No. Our understanding of the military judge's ruling is that, as no defense counsel was made available by the "defense establishment," it was unfair to charge the Government with all the time during this supposed counsel lapse. *But see* n. 3, *supra.* Further, the judge concluded that this lack of counsel was the cause of the delay. *But see* testimony of investigating officer, quoted *supra.* The judge did not specifically identify any portion of RCM 707 upon which this ruling was grounded. Presumably, it was RCM 707(c)(3) upon which the judge relied. That provision excludes from government accountability

> [a]ny period of delay resulting from a delay in a proceeding or a continuance in the court-martial granted at the request or with the consent of the defense.

The Court of Military Review examined the facts of the case and tested all exceptions under RCM 707(c) which could arguably relieve the Government from accountability. The majority concluded that the facts fit none of the exceptions to the rule. We view this as an application of rules of law to given facts, not a reinterpretation of facts previously found by the military judge. Even if the Court of Military Review did "reinterpret" facts, that is an exercise of precisely the sort of power contemplated in Article 66(c), UCMJ, 10 USC § 866(c). This certified issue is without merit.

### Issue II:

*Has the "with the consent of the defense" language of RCM 707(c)(3) been "judicially legislated out of existence"?*

■ No. *See United States v. King,* 30 MJ 59 (CMA 1990).

### Issue III:

*Was the Military judge's ruling unsupported by the evidence or clearly erroneous?*

This is not the question. The question for the Court of Military Review was whether the military judge was correct in law and fact. *See* discussion of Issue I, *supra.* The question for us now is only whether the Court of Military Review was correct as a matter of law. Art. 67(d), UCMJ, 10 USC § 867(d). We conclude that it was not.

### *The Court of Military Review's discussion of RCM 707(c)(3) is as follows:*

We read the Court of Military Appeals cases which have interpreted R.C.M. 707(c)(3) to spell out the applicable standard in unmistakable terms:

—The "clock" runs against the Government absent something to the contrary in writing or on the record. *Ibid.*

—The burden is on the Government to bring an unconfined accused to trial within 120 days. *United States v. Cook,* 27 M.J. at 215 and *United States v. Facey,* 26 M.J. 421, 425 (C.M.A.1988).

—When an accused moves to dismiss for lack of speedy trial, the burden of persuasion is on the Government to make a proper record. *Ibid.* and *United States v. Burris,* 21 M.J. 140, 145 (C.M.A.1985).

—The Government has the power and the burden to prevent speedy-trial problems. *United States v. Carlisle,* 25 M.J. at 428 and *United States v. Cherok,* 22 M.J. 438, 440 (C.M.A.1986).

—A narrow exception may exist: Should the defense engage in misconduct, the accused may well be estopped from claiming lack of speedy trial. *United States v. Burris,* 21 M.J. at 144.

Our fellow service courts have construed this exclusion as well. We read these opinions to say that informal ex-

changes between the prosecution and defense, such as those which occurred here with Lieutenant Colonel R[SJA] and Captain Y [Area DC], cannot be considered delays at the request or with the consent of the defense as envisioned by R.C.M. 707(c)(3). *See United States v. Brodin,* 25 M.J. 580, 581 (A.C.M.R.1987) and cases cited; *United States v. McCallister,* 24 M.J. 881, 889–890 (A.C.M.R.1987); *United States v. Butterbaugh,* 22 M.J. 759 (N.M.C.M.R.1986); *United States v. White,* 22 M.J. 631, 634 (N.M.C.M.R. 1986). *See also United States v. Burris,* 21 M.J. at 145 and Wittmayer, *Rule for Courts–Martial 707: The 1984 Manual for Courts–Martial Speedy Trial Rule,* 116 Military Law Review 221, 244 (Spring 1987).

28 MJ at 890.

As indicated, RCM 707(c)(3) excludes "delay ... granted at the request or with the consent of the defense." In *United States v. Burris, supra* at 144, we were confronted with various "machinations" of counsel in setting a trial date. In concluding that "[t]he Government failed to establish a proper record" to sustain its burden of proving defense delay, we strongly endorsed the observation of Judge Ferguson in *United States v. Schilf,* 1 MJ 251, 253 (CMA 1976),

> that many of the problems involved in attributing pretrial delays will be ameliorated if all such requests for delay, together with the reasons therefor, were acted upon by the convening authority prior to referral of charges to a court-martial, or by the trial judge after such referral, rather than for them to be the subject of negotiation and agreement between opposing counsel. This procedural requirement will establish as a matter of record who requested what delay and for what reason.

We did not, however, intend to rewrite RCM 707(c)(3) to make it an exclusive requirement that either the convening authority or the military judge rule, contemporaneously with the event, on delay accountability. The language in *United States v. Carlisle, supra,* should likewise be read as precatory and not intended to establish a *per se* rule of law. However, the vagaries of the instant facts illustrate the need for the Government to document promptly and effectively any defense delays it seeks to rely on.

█ As the record now stands, the military judge has not addressed the nature of the conversation between Captain Yeoman and the staff judge advocate. Further, the majority of the Court of Military Review has concluded that such conversations can never amount to a defense request for or acquiescence in a delay. Thus, the significance of this all-important conversation has not been adequately resolved. We believe that must be done before this issue can be decided on appeal.

The decision of the United States Air Force Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court to decide whether the Government has met its burden of establishing that Captain Yeoman was requesting or consenting to a delay in the Article 32 for a reasonable time to allow for the appointment of new counsel to represent the accused.[6] In the event the record of trial is insufficient for this purpose, further evidentiary proceedings may be authorized to clarify the matter. If that court again concludes that a speedy-trial violation occurred, the court should indicate whether the additional charge, preferred on June 24, 1988, suffers from a similar defect. Thereafter, the record will be returned directly to this Court.

EVERETT, Chief Judge (concurring):

Judge Kastl, writing for a majority in the court below, states:

> We read these opinions to say that informal exchanges between the prosecution and defense, such as those which occurred here with Lieutenant Colonel R[SJA] and Captain Y [Area DC], cannot be considered delays at the request or

---

**6.** *See United States v. King, supra.*

with the consent of the defense as envisioned by R.C.M. 707(c)(3).

28 MJ 888, 890 (1989). This statement is too sweeping and seems to require that a "request" be made or a "consent" be given in a formal manner. In my view, a request can be made informally in a telephone call, or consent can be given verbally or perhaps even by a nod or other gesture. Of course, such a practice is not desirable, and a request or consent should be documented.

On the other hand, the request or consent must be explicit and not be mere acquiescence; and I believe this is the point that Judge Kastl sought to make. The record here is woefully lacking in evidence of a request for delay or of consent thereto. Certainly, in the exercise of its fact-finding power, the Court of Military Review could properly find that there had been no request for or consent to the delay from March 9 to March 22. Indeed, I suspect this was the finding intended by Judge Kastl. Obviously, such a finding would require setting aside the affected guilty findings and dismissal of charges.

Even though I expect that the ultimate result will be the same, I believe that generally a remand for clarification is desirable when there exists a risk that the decision of the court below rests on an erroneous premise. Therefore, I concur.

SULLIVAN, Judge (concurring in the result):

I agree with my Brother that a remand here serves the interests of justice. In light of this action, there is no need to answer the certified questions with the record in this state.